MAY D. HOPKINS, Respondent, *v.* CONNECTICUT GENERAL
LIFE INSURANCE COMPANY, Appellant.

**Insurance — accident — standard provisions of policy not
whole contract — rider part of policy and should be filed with
superintendent of insurance — effect of failure to file — rider
which does not contradict or vary standard provisions valid —
classification of risks — provision that change in policy must
be approved by officer of company is for benefit of insurer —
provision that clause reducing indemnity must be printed in
bold-face type when not applicable to rider.**

1. The standard provisions for accident insurance policies con-
tained in section 107 of the Insurance Law (Cons. Laws, ch. 28) are
to be contained in every such contract of insurance, but they form
simply a part, not the whole thereof.

2. A rider to a policy of accident insurance is a part thereof and,
therefore, within the requirement of the statute (L. 1913, ch. 155,
§ 107, subd. a) that no policy shall be issued until a copy of its form
shall have been filed with the superintendent of the insurance
department. Failure to file a rider, however, does not invalidate the
policy, but whenever its provisions  conflict with subdivision i of
section 107 the latter is to govern the rights of the parties.

3. A rider to a policy of accident insurance, by which the insured
agreed that the policy should not cover any loss caused directly or
indirectly by any act of any of the belligerent nations engaged in the
present European war, does not conflict with or vary any of the
provisions of section 107 of the Insurance Law and is valid and binding
upon the insured, subject only to construction as provided by that
section, notwithstanding that it had not been filed with the superin-
tendent of insurance.

4. A suggestion that the rider changes the classification of risks
cannot be sustained since such classification, in accident insurance
policies, relates only to the occupation of the applicant.

5. The provision in the policy that no change therein shall be valid
unless approved by the executive officer of the insurer is for the benefit
of the insurer and may be and in this case was waived by it. Further-
more, the policy was not changed where, at its inception, it included
the rider.

6. An objection that under the statute it is provided that no policy
shall be issued unless such portion of the policy as purports by reason
of the circumstances under which a loss is incurred to reduce any

indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and that the rider comes within this clause and is not printed in bold-face type cannot be sustained. It speaks of a case in which the policy does not apply and is simply a limitation of the risk. The rider in question does not in any sense reduce an indemnity provided for in the policy, hence does not come within the clause requiring a rider to be printed in bold-face type.

*Hopkins* v. *Conn. General Life Ins. Co.*, 174 App. Div. 23, reversed.

(Argued November 25, 1918; decided December 10, 1918.)

APPEAL from a judgment, entered August 4, 1916, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles E. Hughes* and *George Coggill* for appellant. Section 107 of the Insurance Law does not require forms of riders to be filed or approved. (*Nelson* v. *Traders Ins. Co.*, 181 N. Y. 472.) The validity of the war rider, being an integral part of the contract of insurance, is expressly recognized by section 107 of the Insurance Law, notwithstanding the fact that the rider was not filed or approved by the superintendent of insurance. (*Kneetle* v. *Newcomb*, 22 N. Y. 249; *Chemung Bank* v. *Payne*, 164 N. Y. 252.) The fact that no approval by an executive officer of respondent was indorsed on the war rider or policy does not invalidate it, nor require its elimination from the contract of insurance. (*Insurance Co.* v. *Norton*, 96 U. S. 234; *Bini* v. *Smith*, 36 App. Div. 463; *Ætna Life Ins. Co.* v. *Frierson*, 114 Fed. Rep. 56; *Assurance Co.* v. *Building Assn.*, 183 U. S. 308; *Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 39; *Wood* v. *A. F. Ins. Co.*, 149 N. Y. 382; *Stewart* v. *U. M. Life Ins. Co.*, 155 N. Y.

·257; *Lewis* v. *Guardian F. & L. Assur. Co.*, 181 N. Y. 392; *Wysotzkey* v. *Niagara Fire Ins. Co.*, 112 App. Div. 599; *McClelland* v. *Mutual Life Ins. Co.*, 217 N. Y. 336.)

*Warren C. Van Slyck* and *Aaron C. Thayer* for respondent. The war rider is invalid and forms no part of the policy, because of the defendant's failure to comply with the statute. (*Baxter* v. *Ins. Co.*, 119 N. Y. 450; *Equitable Life Ins. Co.* v. *Nixon*, 80 Fed. Rep. 796; *Equitable Life Ins. Co.* v. *Clement*, 140 U. S. 226; *Union Central Life Ins. Co.* v. *Pollard*, 26 S. E. Rep. 421; *Fidelity Mutual Life Ins.* v. *Ficklyn*, 74 Md. 172; *Emery* v. *P. F. & M. Ins. Co.*, 52 Me. 322.) The issuance and delivery of the policy to the insured prior to the filing of a copy of the form of the war rider, or of a copy of the form of the policy with the terms, conditions and provisions of the war rider, incorporated therein as a part thereof, with the superintendent of insurance violated the provisions of subdivision a, section 107, chapter 155 of the Laws of 1913. (*Swing* v. *Dayton*, 124 App. Div. 58; 196 N. Y. 503; Elliott on Cont. § 648; Page on Cont. § 332; *Emery* v. *P. F. & M. Ins. Co.*, 52 Me. 322; *Curtis* v. *Leavitt*, 15 N. Y. 16; *Chemung Bank* v. *Payne*, 164 N. Y. 252; *Veeder* v. *Mudgett*, 95 N. Y. 295; *M. L. Ins. Co.* v. *Corey*, 135 N. Y. 326; *Handley* v. *Stutz*, 139 U. S. 417; *Thompson* v. *Denner*, 16 App. Div. 160.) The rider constituted " a change " in the policy and, as such, it had to have the indorsed approval of an executive officer to validate it under the provisions of the statute and of the policy itself. (*Wood* v. *A. F. Ins. Co.*, 149 N. Y. 382; *Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 39.) There was a plain violation of subdivision C of paragraph 6 of section 107 of the Insurance Law. (*Flint* v. *Provident Co.*, 215 N. Y. 254.)

ANDREWS, J. On April 29th, 1915, the defendant issued an accident ·policy to Mr. Hopkins in favor of his

wife for $40,000 payable in case his death was caused
by the burning or wrecking of a vessel on which he was
a passenger. Physically attached to this policy was
a rider by which the insured agreed that the policy should
not cover any loss caused directly or indirectly by any
act of any of the belligerent nations engaged in the present
European War. This rider was prepared by an executive
officer of the defendant, and the agent who negotiated
the policy was authorized to deliver it to Mr. Hopkins
if and when he signed the rider. Mr. Hopkins did sign
and the delivery of the policy was made. By its terms
the policy included the rider and the rider itself stated
that it formed part of the policy. The form of the policy
itself had been properly filed with the superintendent of
the insurance department of the state of New York
but the rider had never been filed with him. Mr. Hopkins
was drowned when the *Lusitania* was torpedoed.

This was the contract which the parties made between
themselves. It is to be enforced as they made it and
understood it unless, because of some statutory provisions,
the courts are required to give it a construction or effect
which the parties never intended.

We are told that this must be done because of section
107 of the Insurance Law. (Cons. Laws, ch. 28.) This
section is entitled " Standard Provisions for Accident and
Health Policies." It largely consists of standard provis-
ions with regard to the details of the insurance contract
which must be contained in every policy together with
certain optional standard provisions both of which are
principally for the protection of the rights of the insured.
It is not said nor was it the intention to say that the policy
should contain only these standard provisions. Unlike the
standard form of fire policy prescribed by section 121 of
the same law they are not exclusive. There is no state-
ment as in the case of fire policies that no agreement
not contained in the standard provisions shall be made.

Like the standard provisions in life policies (Section 101) they are to be contained in every contract of insurance but they form simply a part not the whole of such contract. Two rules, however, are laid down. No policy and no rider to a policy shall contradict, vary or alter these standard provisions; and no policy shall be issued until a copy of its form shall have been filed with the superintendent of the insurance department for the purpose of enabling him to determine if it complies with the law.

The rider in question does not contradict or vary any of these standard provisions. But, as we have seen, it was never filed with the superintendent. It is said that in consequence the rider may be ignored and the remainder of the policy, which was duly filed, may be enforced.

The appellant argues that under the statute riders attached to the policies need not be filed. It says that what the statute requires to be filed is a copy of the form of the policy; that running through the statute a distinction is clearly made between the policy itself and indorsements and papers attached to it. We do not think, however, that in requiring the form of the policy to be filed any such distinction was in the mind of the legislature. The rider itself is a part of the policy. The policy itself says so. So does the rider. It affects the risks and the rates which are based upon the extent of the risks assumed. The purpose of the statute is to see to it that the policy itself, of which the rider forms a part, and all its provisions are such as to meet the approval of the superintendent. If it were not so the greater part of the policy might be contained in riders and the object of the statute would be defeated. Nor is the distinction between the form of the policy and the attached papers consistently maintained. Repeatedly in the Insurance Law the legislature refers to " the policy " as meaning the entire contract between the parties. (Sections 59,

62, 89.)   In the very section before us there is the same
lack of discrimination. Subdivision d prohibits the
issuing of a policy which contains a provision relative
to cancellation at the instance of the insurer except in
a fixed form.   The word " policy " here must include
riders.   Subdivision e prohibits the issuing of policies
purporting to make any portion of the charter of the
insurer a part of the policy by mere reference.   Here
again the prohibition must refer to a rider as well as to
the policy itself.   Finally the legislature provides that
" this policy includes the endorsements and attached
papers."   (Subd. c, 1.)   This would seem to define what
it intended by " a copy of the form " of the policy.   Nor
is the argument with regard to necessity convincing.
The need of issuing riders to meet sudden emergencies is
answered by the authority given to the superintendent
to consent immediately to the form proposed if it is wise
to do so.

What then is the result of the failure to file the rider?
The statute provides two classes of remedies.   If the
violation is willful a fine is imposed and if the company
is a foreign one its license may be revoked.   Next, the
policy is valid but it is to be " construed as provided in
this section, and when any provision in such a policy is
in conflict with any provision of this section, the rights,
duties and obligations of the insurer, the policyholder and
the beneficiary shall be governed by the provisions of
this section."   (Section 107, subd. i.)   Here again we
understand the word " policy " to mean the entire con-
tract whether it is contained in the policy itself strictly
speaking or in agreements attached thereto.

The violation of the section referred to may occur in
various ways: (1) By issuing a policy before a copy of
its form is filed; (2) unless certain statements are made
therein; (3) unless it is printed in a particular manner;
(4) if it attempts to insure more that one person;

6

(5) unless it contains certain standard provisions; (6) if it contains clauses contradicting the standard provisions; (7) if it attempts to incorporate its charter and by-laws in the policy without setting them out in full. However, the section may be violated the policy is still valid. Only it is to be construed as provided in the section, and whenever its provisions conflict with the section the latter is to govern the rights of the parties.

What is intended is in part clear. No corporation issuing a policy may escape liability because of its failure to obey the law. But what is the position of the insured? Clearly as to him the standard provisions are a part of his contract. If it contains clauses contradicting them they may be ignored. So if the company attempts to incorporate its charter by reference. So possibly of clauses or exceptions printed indistinctly. But it does not follow that where the whole or a part of a policy has not been filed, the insured may recover upon a contract never made by him and which the statute does not say he shall be held to have made. The statute says the contract is valid — not simply valid as against the insurer. It is to be construed in a certain way, but the question of construction has no relation to this particular default. Nor have the rights and obligations of the parties. They are fixed by the standard provisions and by the regulations as to what the policy shall or shall not contain and the regulations as to the form required so the insured may have notice of its contents. They are not determined by the decision of the superintendent as to whether the policy complies with the law. This is not the case for an application of the rule that illegal or prohibited contracts are void, even when the statute does not expressly so declare. Here the statute itself says they shall not be void but valid. Neither as we have said is there conflict between the provisions of the rider and the provisions of the section. True, it is suggested that the

statute provides that the classification of risks mentioned in the policy shall mean only those last filed with the superintendent and that this rider changes this classification without authority. This is not the meaning of the term "classification of risks" in insurance practice. That relates not to the perils insured against nor to the amount to be paid, but in fire insurance to the nature and situation of the articles insured; in accident insurance to the occupation of the applicant. So in this policy it is said "Albert Lloyd Hopkins, under classification referred by occupation as President." This classification was in no wise altered by the rider. The policy which is valid is the contract as the parties have agreed upon it so far as it is consistent with the statute — not the contract as changed and altered by the excision of some of its provisions. What if no part of a policy defining the risks insured against had been filed? Are only the standard provisions which the law says shall be inserted in every policy to be enforced? In themselves they form no complete contract.

The respondent also questions the validity of the rider under the standard clause that "No change in this policy shall be valid unless approved by the executive officer of the insured and such approval be endorsed thereon."

There are two answers to this claim. This clause is for the benefit of the company and may be and was waived by it. (*Belt* v. *American Central Ins. Co.*, 29 App. Div. 546–552; affirmed, 163 N. Y. 555.) Further, the policy was not changed. At its inception it included the rider. All the papers together constitute the policy and it is as agreed upon by the parties. This is the agreement which the agent was expressly authorized to make and he was prohibited from making any other. The policy never had any existence except as it contained the agreement in the rider. (*Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382–386.)

A further objection is made that under the statute it is provided that no policy shall be issued unless such portion of the policy as purports by reason of the circumstances under which a loss is incurred to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion or text of the policy. It is said that the rider comes within this clause and is not printed in bold-face type. We cannot agree with this contention. The rider does not in any sense reduce an indemnity provided for in the policy. It speaks of a case in which the policy does not apply. It is simply a limitation of the risk. Such is evidently the construction adopted by the insurance department for a rider regarding hernia is in the same type and as it was filed it must have met the approval of the superintendent.

The judgment appealed from should be reversed and that of the trial court affirmed, with costs in this court, and in the Appellate Division.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO and POUND, JJ., concur; McLAUGHLIN, J., not sitting.

Judgment accordingly.