STATE EX REL. TIME INSURANCE COMPANY and others vs.
SMITH, Commissioner of Insurance.

*April 12—October 14, 1924.*

*Insurance: Courts: Original jurisdiction of supreme court: When
exercised: Cause publici juris: Appeal from order of insur-
ance commissioner: Whether exclusive: Health and accident
insurance: At common law: Regulation of policies by legis-
lature: Standard Provisions Law: Other provisions in pol-
icies: Valued benefits: Validity: Public policy: Construction
of ·statute by successive insurance commissioners: Weight:
Renewal receipts.*

1. An action by the state, on the relation of certain insurance
   companies, in behalf of themselves and all other persons
   similarly situated, to enjoin the state commissioner of ·in-
   surance from refusing to renew the licenses and to establish
   the rights of the companies under the Standard Provisions
   Law (sec. 208.05, Stats. 1923), is within the original juris-
   diction of the supreme court, since the threatened act of the
   commissioner of insurance will, if carried out, affect a large
   number of people in the state in such a way that· the question
   presented approaches a matter that is *publici juris,* and al-
   though a remedy in the lower court is not entirely lacking, a
   speedy, final, and conclusive determination of the controversy,
   obtainable only in this court, would be in the interest of the
   public.  p. 468.
2. This action not being one to review an order of the commis-
   sioner merely, but to declare and establish the rights of the
   relators and to restrain the commissioner from depriving
   them of the exercise of a right which existed prior to the
   enactment of the Standard Provisions Law, the statutory
   remedy is not exclusive, nor is it adequate.  p. 469.
3. The legislature cannot, under the guise of prescribing a special
   remedy, deprive a citizen of legal and constitutional rights
   which he enjoys under the constitution and the law.  p. 469.
4. The right to make a contract of insurance existed at common
   law, and parties might make under the common law such
   contracts of insurance as they wished.  p. 470.
5. The right of free contract is one of the inherent rights guaran-
   teed to the citizen by both the state and national constitutions.
   p. 470.
6. Insurance companies may, in the absence of statutory regula-
   tion, issue such health and accident policies as they see fit.
   p. 470.

[7. While the power of the legislature to regulate the business of life insurance is very broad, the question whether or not it might, in the exercise of the power to regulate insurance, forbid the making of any contracts of health and accident insurance except on designated conditions, is not presented or determined.]   p. 471.

8. The legislative intent to prohibit the issuance of health and accident policies in any other form than that prescribed by law must be clearly and definitely expressed.   p. 471.

9. Under the Standard Provisions Law (sec. 208.05, Stats. 1923), health and accident policies may contain provisions other than those prescribed in such law, where they do not conflict with and do not vary, alter, or extend the standard provisions or optional standard provisions prescribed in such law.   p. 472.

10. It is the duty of the court to determine the legislative purpose, and not to pass on questions of public policy, such questions being primarily for the legislature.   p. 474.

11. The construction given to a statute by state officers is not controlling, particularly where there is no ambiguity in the statute and its provisions are clear and unmistakable.   p. 474.

12. Health and accident policies may provide for the payment of valued benefits, and need not restrict recovery to amount of actual loss, such provisions not being in conflict with the Standard Provisions Law, notwithstanding the use of the word "indemnity" in such law.   p. 477.

13. The issuance of renewal receipts by which accident and health policies are renewed from year to year is not violative of the Standard Provisions Law, sub. (2), requiring a policy to state when the insurance takes effect and when it terminates. p. 480.

CROWNHART, J., dissents.

THIS IS AN ORIGINAL ACTION brought pursuant to leave granted in this court to restrain the respondent from refusing to renew the licenses of certain insurance companies and for other relief. A temporary restraining order was issued on February 15, 1924, under and by virtue of which the *status quo* has been maintained during the pendency of this action. The respondent demurred to the complaint and the case was submitted upon oral argument and briefs of counsel.

For the plaintiff and relators there was a brief by *Richmond, Jackman, Wilkie & Toebaas,* attorneys; a separate

brief for relators by *Olin, Butler, Thomas, Stebbins & Stroud,* of counsel, all of Madison; and a memorandum in behalf of the *Old Line Life Insurance Company of America* by *Lawrence A. Olwell* of Milwaukee, general counsel; and the cause was argued orally by *Ralph W. Jackman, H. L. Butler, B. H. Stebbins,* and *H. M. Wilkie* of Madison, and *Lawrence A. Olwell* and *Julius E. Roehr* of Milwaukee.

*Daniel H. Grady* of Portage, special counsel, for the defendant.

The following opinion was filed June 3, 1924:

ROSENBERRY, J. We shall not attempt to set out in detail the facts stated in the complaint. While the facts therein stated are material to the issues raised and necessary as a basis for the relief prayed for by the relators, it is not necessary to set them out in full in order to disclose the nature of the questions raised which are decisive of the controversy here.

In 1913 there was enacted in this state (ch. 601, Laws of 1913) a law recommended by the National Convention of Insurance Commissioners providing for certain statutory provisions in accident and health policies and establishing certain requirements as to such policies. It became sec. 1960, Stats. 1921, and is now sec. 208.05, Stats. 1923. This law is commonly referred to as the Standard Provisions Law. A law substantially the same is now in effect in sixteen states and a somewhat similar statute is in force in six other states. By reason of its length we shall not set out the entire statute. Sub. (1), (2), and par. (1) and (2) of sub. (3), being particularly brought in question, are printed in the margin.[1] Other provisions of the statute

[1] (1) On and after the first day of January, 1914, no policy of insurance against loss or damage from the sickness, or the bodily injury or death of the insured by accident shall be issued or delivered to any person in this state until a copy of the form thereof and of the classification of risks and the premium rates pertaining thereto have been filed with the commissioner of insurance; nor

material to a consideration and determination of the questions raised here will be referred to in the course of the opinion.

Among other things the Standard Provisions Law provides that copies of forms of policies must be submitted by companies to the commissioner of insurance for approval,

shall it be so issued or delivered until the expiration of thirty days after it has been so filed unless the said commissioner shall sooner give his written approval thereto. If the said commissioner shall notify, in writing, the company, corporation, association, society or other insurer which has filed such form that it does not comply with the requirements of law, specifying the reasons for his opinion, it shall be unlawful thereafter for any such insurer to issue any policy in such form.

(2) No such policy shall be so issued or delivered (1) unless the entire money and other considerations therefor are expressed in the policy; nor (2) unless the time at which the insurance thereunder takes effect and terminates is stated in a portion of the policy preceding its execution by the insurer; nor (3) if the policy purports to insure more than one person; nor (4) unless every printed portion thereof and of any indorsements or attached papers shall be plainly printed in type of which the face shall not be smaller than ten-point; nor (5) unless a brief description thereof be printed on its first page and on its filing back in type of which the face shall be not smaller than fourteen-point; nor (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply, provided, however, that any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy.

(3) Every such policy so issued shall contain certain standard provisions, which shall be in the words and in the order hereinafter set forth and be preceded in every policy by the caption "Standard Provisions." In each such standard provision wherever the word "insurer" is used there shall be substituted therefor "company" or "corporation" or "association" or "society" or such other word as will properly designate the insurer. Said standard provisions shall be:

(1) A standard provision relative to the contract which may be in either of the following two forms: Form (A) to be used in policies which do not provide for reduction of indemnity on account of change of occupation, and Form (B) to be used in policies which do so provide. If Form (B) is used and the policy provides indemnity against loss from sickness, the words "or contracts sickness" may be inserted therein immediately after the words "in

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.

and that if the commissioner of insurance shall in writing notify a company that any form of policy does not comply with the requirements of law, specifying the reasons for his opinion, it shall be unlawful to issue such policy thereafter.

The law also provides that the commissioner of insurance may revoke the license of any company wilfully violating any of the requirements of the law. Sub. (13), sec. 208.05, Stats. 1923.

At the time of the enactment of the Standard Provisions Law in 1913 a large number of insurance companies were engaged in the business of writing health and accident in-

the event that the insured is injured." (A):—(1) This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance. No reduction shall be made in any indemnity herein provided by reason of change in the occupation of the insured or by reason of his doing any act or thing pertaining to any other occupation. (B):—(1) This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the insurer's classification of risks and premium rates in the event that the insured is injured after having changed his occupation to one classified by the insurer as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the insurer will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the insurer for such more hazardous occupation. If the law of the state in which the insured resides at the time this policy is issued requires that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the state official having supervision of insurance in such state then the premium rates and classification of risks mentioned in this policy shall mean only such as have been last filed by the insurer in accordance with such law, but if such filing is not required by such law then they shall mean the insurer's premium rates and classification of risks last made effective by it in such state prior to the occurrence of the loss for which the insurer is liable.

(2) A standard provision relative to changes in the contract, which shall be in the following form:

(2) No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the insurer and such approval is indorsed hereon.

surance in this state. After the act went into effect the policies of insurance written by said companies were generally rewritten to conform to the provisions of the law. Such policies contained the "Standard" and "Optional Standard" provisions as required by the law and provided insurance against loss or damage from sickness or bodily injury or death of the insured by accident. The coverage under said policies of insurance differed to some extent to meet the needs and demands of the public. Premiums were varied according to the coverage given. The policies so submitted and approved by prior commissioners of insurance contained certain agreements, which may be described as follows:

(a) *Specific indemnities.* Agreement for the payment of a lump sum indemnity for specific bodily injuries.         .

(b) *Annual increase.* Agreements for annual increase of indemnities.

(c) *Monthly or weekly accident indemnity.*

(d) *Double indemnity.*

(e) *Hospital indemnity.*

(f) *Indemnity for surgical operations.*

And many other provisions of a similar nature, which need not be referred to in detail.

It is alleged in the complaint that there are at the present time in force in Wisconsin more than 130,000 policies of insurance, containing some or all of the features above referred to. It has been the uniform practice to renew a large part of the business written, and many of the policies now in force have been renewed from year to year for a number of years. The policy forms containing these agreements have been approved by three successive commissioners of insurance—Mr. Herman L. Ekern, Mr. M. J. Cleary, and Mr. Platt Whitman—as being in compliance with the statutory requirements. Prior commissioners of insurance have also repeatedly approved and confirmed the practice of companies in renewing policies by the issuance of a re-

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.

newal certificate. These renewal certificates were in substance of the following form:

Form 2496C                                                           No. R
       The Indemnities Under This Renewal Are
   Principal Sum $———. Weekly Indemnity Accident
              $———. Sickness $———.

CONTINENTAL CASUALTY COMPANY.

H. G. B. Alexander, President.

General Office, Chicago, Illinois.

Policy No.———, originally issued under date of ———, 192–,
to Mr. ——— ———, of ———, is hereby renewed for a further
period of one year from 12 o'clock noon (standard time at
the insured's place of residence) of the ——— day of ———,
192–. This renewal is effective only upon condition that a
premium of $——— be paid for it as follows: . . .

In witness whereof the Continental Casualty Company
has caused this certificate to be signed by its president and
secretary but the same shall not be binding upon the company unless countersigned by its policy writer and delivered
to the insured. Countersigned and issued ——— at ——— the
——— day of ———, 192–.
By ——— ———,     E. G. TIMME,     H. G. B. ALEXANDER,
       Policy Writer.    Secretary.        President.

On October 23, 1923, without previous hearing, the commissioner of insurance sent out to all companies doing a
health and accident business in the state of Wisconsin a
communication which is printed in the margin.[1] Following

---

[1] EXHIBIT B.

THE STATE OF WISCONSIN,

*Department of Insurance.*

Madison, October 23, 1923.
*To all Health and Accident Insurers doing business in Wisconsin:*
   The multiplicity and variety of health and accident policy forms
and the different conceptions of the rights of claimants manifest
in claim settlements demonstrate that the business has not been
standardized as contemplated by the Standard Provisions Law
(sec. 1960, Wis. Stats., renumbered in 1923 as sec. 208.05).
   The failure of all attempts for ten years to realize such standardization by co-operative action of the insurers has destroyed

this communication there was a conference between the representatives of many of the leading insurance companies and the commissioner of insurance. The letter was treated as an order and an application was made for a rehearing. It was agreed by the commissioner of insurance and the representatives of the companies that every effort would be made to prosecute a review of the proceedings for the pur-

hope of such action. Manifestly, the tendency is away from standardization and toward an increasing disregard of the law. Under the circumstances, I believe that the application of the law to policy forms filed in the department will tend to standardization and by the elimination of ambiguity and indefiniteness from the contracts promote the fair and equitable adjustment of claims.

Disapproval of a policy form makes it unlawful to issue such form.

Policy forms heretofore filed in the department which have not been disapproved and have been held by possible construction to provide insurance under the law will be permitted until the beginning of the new license year, March 1, 1924. Thereafter only such forms will be permitted as comply literally and fully with the law.

For your guidance in the preparation of new forms I submit the following:

1. All personal accidents and all diseases except those specifically excepted must be covered. Exceptions must describe the accident or class of accidents and name the disease or class of disease excepted. (Subsection 1 and subdivision 6 of subsection 2.)

2. Only the following indemnities may be provided: Indemnity for loss of life by accident, indemnity for loss of time by accident, indemnity for loss other than that of time by accident, indemnity for loss of time by sickness, and indemnity for loss other than that of time by sickness. (Subdivisions 9, 10, and 11 of subsection 3 and corresponding standard provisions.)

3. The amount of insurance must be given for each kind of indemnity provided. Indefinite periods for the payment of indemnity for loss of time will not be permitted, and the amount of indemnity for loss other than that of time may not be determined by the lapse of time.

4. The time when the insurance takes effect and terminates must be stated in a portion of the policy preceding its execution by the insurer. If a policy provides for renewal, a new policy must be issued at each renewal. (Subdivision (2) of subsection (2) of section 1960.)

5. Optional benefits in lieu of any indemnity to which the insured may be entitled will be permitted but the optional nature of the benefit must be clear.

6. Differences in premium rates must be based on a classification of risks by occupation.

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.

pose of obtaining final adjudication prior to March 1, 1924. On November 26, 1923, a hearing was had by the commissioner of insurance, and on or about February 4, 1924, the commissioner having reaffirmed the order, the commissioner filed a memorandum (Exhibit G). Because this memorandum states the position of the defendant it is printed in the margin in full.[1]

7. Reductions in the indemnity stated in the policy may be made only as provided in the law.

a. Change to more hazardous occupation. (Standard Provision No. 1.)

b. Insurance covering same loss with another insurer. (Optional Standard Provision No. 17.)

3. Other insurance with the same insurer. (Optional Standard Provision No. 17.)

d. Substandard risk. (Proviso to subdivision 6 of subsection 2.)

The department asks and expects the earnest co-operation of those insurers who desire to give service in this line of insurance.

Yours very truly,
W. STANLEY SMITH,
Commissioner of Insurance.

[1] EXHIBIT G.

*Memorandum.*

The testimony and the exhibits presented in these hearings conclusively establish that the health and accident insurance business is not organized and operating to meet the legitimate demand and need of the public for this kind of insurance.

For the Insurance Department "there are two sources of trouble: first, the number of complaints on rejections and reductions of claims; and second, the disposition on the part of insurers to resent any supervision or suggestions of the forms of policies by the department. The principal source of the trouble is the form of the policies. Almost invariably, when the department takes up a complaint on a rejection or a reduction of a claim, the insurer presents a perfect defense in a literal and strict construction of the policy. . . . A review of health and accident insurance seems to establish that the essential to its improvement is standardized, classified, and simplified policy forms." Fifty-Second Annual Report of the Commissioner of Insurance of Wisconsin.

By the statement of departmental policy, or order of October 23, 1923, the Wisconsin Insurance Department takes the position that the Standard Provisions Law, other insurance laws, and the general law of contracts are entirely adequate to enable the commissioner of insurance to require such standardization, classification, and simplification of policy forms.

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.

It is the contention of relators that the commissioner of insurance has no power. or authority under the laws of the state of Wisconsin to refuse to renew the license of relators and other companies similarly situated except for wilful disobedience of the Standard Provisions Law, and that the

It is axiomatic that insurance may be provided by insurers against loss or damage from only the contingencies specified by law. The law defines the insurance authorized as "insurance against loss or damage from the sickness or the bodily injury. or death of the insured by accident." There is no provision of law authorizing insurance against loss or damage from specific accidents or sicknesses. The law provides for exceptions from a policy, and manifestly exceptions must be exceptions of accidents and diseases. Health and accident insurance differs from life insurance in this respect, for in life insurance there may be no exceptions from or limitations upon the cause of death, and a life insurer may, in addition to providing insurance against premature death, provide an additional benefit for death from accident. A life insurer may not, however, provide insurance against death from a specific accident or disease. The law does not authorize insurance against mosquito bites or automobile accidents, or mumps, typhoid fever, cancer, or tuberculosis.

Nor may an insurer make contracts except under the regulations of law. Thus, if the law specifies or provides for the kind or kinds of indemnities or benefits to be given, the insurer is limited to such indemnities or benefits. The Standard Provisions Law provides for and thereby authorizes indemnity for loss of life by accident and for loss of time and for loss other than that of time from accident and sickness. Nowhere does the law specifically or inferentially authorize indemnity or benefits for loss of fingers, toes, hands, arms, feet, legs, eyes, ears, a nose, or any other member or organ, taste, smell, sight, hearing, or any other faculty, or for pain or suffering or for disability which is immediate on an accident, which is continuous, total, partial, confining or non-confining, requires the attendance of a physician or surgeon, or requires that a loss or disability shall occur within a certain period of time after an accident or after being afflicted with a disease. Not only is there no authority given for the payment of indemnity or a benefit for any such loss, but the other provisions of law could not be effective if such benefits or indemnity be given. Manifestly the value of such losses and the liability to suffer them varies with each individual insured, and since the group is fundamental in insurance, the insurer could not file a schedule of premium rates and a classification of risks for the group of the insured as required by the law.

Insurance is a method authorized by law for distributing the losses of individuals through a group. The group is fundamental to insurance, and were the hazard of loss and the amount at risk the same for all the members of the group, the contributions or

commissioner of insurance has no right, as a condition of issuing or renewing licenses, to require the relators and other companies to conform to the conditions set out in the letter of October 23d and to the memorandum filed February 4, 1924.

premiums for each member of the group would be equal. The liability to meet with loss varies, and by one form of Standard Provisions No. 1 occupation is recognized as the basis for measurements of such variations. Such basis is exclusive not only because of the rule that an insurer may do only such acts as are expressly or necessarily authorized, but because of the express prohibition of subsection (5), section 208.05, against any provision "contradictory in whole or in part" of any of the Standard or Optional Standard Provisions.

Since specific and valued benefits for specific bodily losses and physical disabilities are not authorized in health and accident insurance, and such provisions of policies are not binding upon the parties to such contracts except as they may be founded in fraud and in an intent to deceive, and since provisions on such a basis cannot be recognized as proper and legitimate, the needs and necessities of the proper conduct of the business to perform its primary function of paying claims must be given consideration and such provisions must be construed as designed to facilitate claim settlements and therefore to be in the nature of offers on the part of the insurer to make such settlements under the conditions given, thus relieving the claimant from the necessity of waiting until the loss has fully accrued and also of the necessity of establishing the amount of his loss. The order of October 23, 1923, requires that the optional nature of such benefits be clear.

The Standard Provisions Law formulates Standard and Optional Standard Provisions under which the insurers may protect themselves against the payment of benefits in excess of indemnity. If they do not make use of these provisions they are liable for the full amount of benefits provided by the policies. Their liability in such cases is based on an implied purpose and intent to mislead and deceive the insured as to the proper limitations of health and accident insurance.

Under the law, the making of premium rates entirely and the making of classifications of risks with the limitation that such classifications shall be based on occupation are left with the insurers. The classifications of risks filed with the department are not based solely on occupation but on sex, age, exposures, etc. Although it was within the knowledge of the department that less than fifty per cent. of the premiums collected are returned to policy-holders in indemnities and therefore efficient service is not being given, the department has not attempted to remedy this evil but has left this matter for future consideration and regulation by the legislature.

The evidence presented by the petitioners in these hearings deals

Before proceeding to consider the case upon the merits, it is necessary to dispose of the contention raised by the respondent that this court is without jurisdiction or ought not to exercise original jurisdiction.   The law relating to the exercise of the original jurisdiction of this court was declared in the *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164.   The entire matter was there considered historically and the conclusion reached that the exercise of its original jurisdiction was warranted in the following cases: when—

"(1) a citizen is wrongfully deprived of his liberty; (2) a state office has been usurped; (3) a franchise grantable only by the state has been usurped, abused, or forfeited; (4) a law regulating public-service corporations in the interests of the people is systematically disobeyed and set at

---

only incidentally with the proper construction and interpretation of the law regulating health and accident insurance policies, but the evidence stresses and assumed practical construction of the law by the commissioners who held office and approved policy forms after the Standard Provisions Law became effective.   Inconsistently, but inferentially from the objections of the petitioners to the introduction of evidence tending to sustain the order in question, the petitioners take the position that the present commissioner is bound by the approvals of former commissioners but not by disapprovals. No evidence of an affirmative construction of the law contrary to the construction of the order of October 23, 1923, was offered.   On the contrary, the evidence shows that none of the policy forms submitted were ever unqualifiedly approved, and that when policy forms were approved the approvals were only temporary; to prevent interruption of the business,. to waive the thirty-day filing requirement, to avoid discrimination between insurers in the forms permitted, to enable the insurers to co-operate among themselves in the preparation of forms meeting the requirements of law, and to enable the department to continue its investigation and study of the subject.

The evidence presented clearly establishes that the department has been diligent in its study of health and accident insurance; that it has definitely adopted as its policy disapproval of policy forms providing benefits for loss from specific accidents or diseases, and disapproval of forms providing specific and valued benefits only; that it has eliminated from the policies permitted in this state provisions for the payment of quarantine, funeral, and other benefits which are not proper health and accident indemnities. While the department has consistently appreciated that it was the duty of the insurer to formulate policy forms under the law, it has

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.

naught; (5) a navigable river which the state is bound to keep open as a highway for all is obstructed or encroached upon, or a public railroad built under a charter granted by the state is about to be destroyed; (6) a state officer declines to perform a ministerial duty in the performance of which the people at large have a material interest; (7) a state officer is about to perform an official act materially affecting the interests of the people at large, which is contrary to law or imposed upon him by the terms of a law which violates constitutional provisions; (8) the situation is such, in a matter *publici juris,* that the remedy in the lower courts is entirely lacking or absolutely inadequate, and hence jurisdiction must be taken or justice will be denied."

If the allegations of the complaint are true, then a state officer is about to perform an official act which is contrary to law. The question then arises whether or not it affects

given the insurers desiring its assistance the benefit of its study and investigation.

The orders issued subsequent to the order of October 23, 1923, are supplementary to the purpose of such order to make effective the law on health and accident insurance. The average health and accident claim is small, and claimants are unable, because of the expense, to secure their rights in courts and to protect themselves against unjust rejections and reductions of their claims. The obligation of the insurance commissioner to exercise the supervisory powers conferred on him is therefore of peculiar importance in this line of insurance. In fixing March 1, 1924, the beginning of the new license year, as the time when the order of October 23, 1923, would be enforced, the insurers were given ample time to prepare proper policy forms and to evidence their desire to co-operate with the commissioner in the proper organization and operation of this branch of insurance.

Less than one quarter of the insurers authorized to do a health and accident insurance business in this state have filed petitions for a rehearing on the order of October 23, 1923. The department has been advised that some of these petitions were filed only because the petitioners were urged thereto by other petitioners. Under the circumstances, the department believes that it has at least the passive indorsement and support of the great majority of the health and accident insurers in its determination to raise the standards of the business to enable it to realize its possibilities for service under the law. In recognition of such support, the department will send to the insurers material in the way of correctly formulated policy forms and provisions to aid them in preparing forms for use after March 1, 1924, so their business may not be interrupted and their agency forces be disorganized.

only the relators and other companies similarly situated, or whether it relates to the people at large and for that reason the jurisdiction of this court should be exercised.  It was not held in the *Income Tax Cases, supra,* that the jurisdiction of the court might not be exercised in other cases, but merely that there was no precedent for its exercise in any except the cases indicated.  That it is a power that should be sparingly and cautiously exercised there is no doubt, nor are we disposed to relax the vigilance of the court in maintaining its character as an appellate court and permitting its original jurisdiction to be invoked only in cases where the exercise of that extraordinary power is clearly warranted. In our opinion, under the allegations of the complaint, which we must take as true upon a demurrer, the threatened act of the commissioner of insurance will, if carried out, affect a large number of the people of this state in such a way that the question presented certainly approaches a matter that is *publici juris.*  While a remedy in the lower court is not entirely lacking, it is quite evident that a speedy, final, and conclusive determination of the controversy, which can only be finally and definitely settled here, would be in the interest of the public.  If the contention of the commissioner of insurance is sustained, it is a matter of great importance in the administration of the law relating to health and accident insurance.

It is said that the law provides a complete, adequate, and exclusive remedy.  Reference is made to sec. 200.11, Stats., which provides:

"(3) Any such final order [of the commissioner of insurance] may be reviewed in the circuit court for Dane county, subject to removal as in other cases, provided:

"(a) [Notice.]

"(b) Such application shall be heard upon all the evidence presented before the commissioner and no further or additional evidence shall be presented before the court.  But the applicant shall be entitled to a further hearing or further

hearings before the commissioner, at which either party may present additional evidence on which the commissioner may make such further order as the case may require.

"(c) [Company must be doing business in this state.]"

It is argued that under the doctrine of *State ex rel. Cook v. Houser*, 122 Wis. 534, 100 N. W. 964; *Clancy v. Board of F. & P. Comm'rs*, 150 Wis. 630, 138 N. W. 109, and similar cases, the statute having created a new right and provided a specific remedy, the remedy provided is exclusive of all other remedies. This incidentally raises a question treated later. Does the statute create a right? However, if it be conceded that the statute does create a right, the present action is one not merely to review an order made by the commissioner of insurance in the administration of his office, but to declare and establish the right of the relators under the law and the constitution and to restrain the commissioner of insurance from depriving them under the cover of law from the exercise of a right which existed prior to the enactment of the Standard Provisions Law.

The legislature cannot, under the guise of prescribing a special remedy, deprive a citizen of legal and constitutional rights which he enjoys under the constitution and the law. We conclude, therefore, that the remedy provided by the statute is not exclusive under the circumstances disclosed by the complaint in this case and that the court should exercise its original jurisdiction for the reasons stated; that the remedy provided by the act is not exclusive, nor is it adequate. The order of the commissioner, if valid, does not determine in what respect or to what extent the provisions of a proposed policy alter, vary, or contradict the Standard Provisions Law, but in legal effect, by an administrative order, establishes a standard policy.

A consideration of the letter of October 23, 1923, and of the memorandum of February 4, 1924, and the allegations of the complaint discloses that there are two fundamental differences in the position of relators and that of

defendant. The first may be stated as follows: that the right to enter into a contract of insurance is derived from the statute. The memorandum says:

"Insurance is a method authorized by law for distributing the losses of individuals through a group. . . . The liability to meet with loss varies, and by one form of Standard Provisions No. 1, occupation is recognized as the basis for measurements of such variations. Such basis is exclusive not only because of the rule that an insurer may do only such acts as are expressly or necessarily authorized, but because of the express prohibition of subsection 5, section 208.05. . . ."

Quite obviously this proposition involves an erroneous theory of law. The right to make a contract of insurance existed at the common law and parties might make under the common law such contracts of insurance as they wished. The right of free contract is one of the inherent rights guaranteed to the citizen by our constitution as well as by the national constitution. *State ex rel. Ornstine v. Cary,* 126 Wis. 135, 105 N. W. 792.

This right, like all other rights, is subject to limitation or regulation in the interest of the general welfare, and the power of the state to regulate the issuance of policies of insurance is conceded, but by regulation no right is created. A right already in existence is limited and regulated. Therefore the right to issue policies of health and accident insurance exists, and in the absence of statutory regulation is unlimited.

*Second.* It therefore becomes necessary to determine whether or not the Standard Provisions Law prohibits the exercise of the right which the relators had at common law except it be done in the manner therein specified, or whether the Standard Provisions Law assumes the right which existed at common law and only attempts to limit or regulate the right in certain particulars. In other words, is the law a Standard Policy Law or a Standard Provisions Law?

In this connection attention is called to the fact that we

are not here dealing with the power of the legislature, but are called upon to interpret and apply a legislative enactment. Whether or not the legislature might, in the exercise of the power to regulate insurance in a reasonable manner, forbid the making of any contracts of health and accident insurance except upon conditions prescribed by the legislature, is a question not before us. There can be no doubt, however, that the power of the legislature to regulate the business of insurance is very broad. *Welch v. Fire Asso.* 120 Wis. 456, 98 N. W. 227; 32 Corp. Jur. p. 981, § 11, and cases cited.

If the legislature intended to prohibit the issuance of health and accident insurance contracts in any other form than that prescribed by the law, the expression of such intention, in view of its drastic and revolutionary character, should be clear and definite. The statute does provide in sub. (1), sec. 208.05, already set out in the margin, that no policy of insurance against loss or damage from the sickness or the bodily injury or death of the insured by accident shall be issued until the form thereof has been approved by the commissioner of insurance. Certain other prohibitions contained in sub. (2) also are set out, relating, first, to the statement of the consideration; second, to the time when the policy takes effect and terminates; and third, in cases where the policy purports to insure more than one person, to the size of type to be used in printing the policy; and other provisions of like character. When it comes, however, to that part of the law which requires the standard provisions to be inserted in all policies, the statute says:

"(3) Every such policy so issued shall contain certain standard provisions, which shall be in the words and in the order hereinafter set forth and be preceded in every policy by the caption 'Standard Provisions.' "

The statute also contains a provision (p. 1637) to the effect that—

"No such policy shall be so issued or delivered if it contains any provision contradictory, in whole or in part, of

any of the provisions hereinbefore in this act designated as 'Standard Provisions' or as 'Optional Standard Provisions;' nor shall any indorsements or attached papers vary, alter, extend, be used as a substitute for, or in any way conflict with any of the said 'Standard Provisions' or the said 'Optional Standard Provisions.' "

This language clearly implies that a policy may contain provisions other than those prescribed in the Standard Provisions Law. They must be such, however, as do not conflict with the standard provisions or the optional standard provisions, nor vary, alter, or extend such provisions. Far from prohibiting the execution and delivery of contracts containing only the clauses found in the Standard Provisions Law, the act clearly assumes that the policies may contain other provisions.

The New York court of appeals said:

"It is not said, nor was it the intention to say, that the policy should contain only these standard provisions. . . .

"Are only the standard provisions which the law says shall be inserted in every policy to be enforced? In themselves they form no complete contract." *Hopkins v. Connecticut G. L. Ins. Co.* 225 N. Y. 76, 121 N. E. 465.

We pass, therefore, to a consideration of the question of whether or not the policies heretofore approved by the former commissioners and the policies described at length in the complaint and submitted for approval to the present commissioner vary, alter, extend, or in any way conflict with the standard provisions or the optional standard provisions. A single fundamental question underlies the determination of this controversy although its application involves many details. The argument in support of the respondent's position is already set out in the margin. (See Exhibit G.) The position of the respondent may be epitomized as follows: that the law defines the insurance authorized as "insurance against loss or damage from the sickness or the bodily injury or death of the insured by accident," and

therefore the policy can be only for the damage actually sustained by the person insured on account of the particular accident and there can be no valued or agreed benefits to be paid for specific bodily injuries. The respondent argues that the insurance must therefore be for loss of life by accident, for loss of time, and for loss other than that of time from accident and sickness, and there can be no indemnity or benefits for loss of fingers, toes, hands, arms, feet, legs, eyes, ears, a nose, or any other member or organ, taste, smell, sight, hearing, or any other faculty, or for pain or suffering, or for disability which is immediate on an accident, which is continuous, total, partial, confining, or non-confining, requires the attendance of a physician or surgeon, or requires that a loss or disability shall occur within a certain period of time after an accident or after being afflicted with a disease.

Whether or not respondent is correct in his contention depends largely upon the meaning of the word "indemnities." It is argued that the Standard Provisions Law refers to such insurance only in the way of indemnity; thus sub. (3), par. (1), prescribes forms respectively for policies which do and which do not provide for reduction in any "indemnity" by reason of a change to a more hazardous occupation, and so par. (3) and (4) of the same subsection are emphasized. It is said that the idea that indemnity for measurable loss is all that is contemplated or authorized, since the prescribed forms relating to policies of insurance provide only (a) against loss from accident; (b) against loss from sickness; and (c) against loss from both. The word "indemnities" is said to be used in a similar sense in many other paragraphs of the Standard Provisions Law.

It is argued that the contention that the word "indemnity" is used in the sense of loss as opposed to valued benefits is sustained by the fact that sub. (12) of sec. 208.05 exempts workmen's compensation insurance and blanket policy in-

surance issued to any municipal corporation for the benefit of certain of its officers, for such an exemption would be unnecessary if a valued benefit policy were permissible under the law.

It does not fall within our province to determine the relative merits of the two theories of insurance contended for; one by the relators that a policy providing valued benefits is not forbidden by the act and does not alter, vary, or contradict the standard provisions and optional standard provisions; or second, that contended for by respondent, that in the issuance of health and accident policies the insurer may insure only against actual loss and therefore there may be no contract for valued benefits. The question presented to this court is, What did the legislature intend and what was the legislative purpose in the enactment of the Standard Provisions Law? There may be, as stated in the memorandum (Exhibit G), grave questions of public policy involved. As this court has many times pointed out, questions of public policy are for the consideration of the legislature and not for the courts primarily. It is therefore our duty to determine what the legislative purpose was and not to pass upon questions of public policy. Reference has already been made to the fact that the Standard Provisions Law has been construed by three former commissioners in accordance with the contention of the relators. Construction by state officers is not controlling, particularly where there is no ambiguity in the statute and its provisions are clear and unmistakable. *Smith v. State,* 161 Wis. 588, 155 N. W. 109.

However, in *State ex rel. Bashford v. Frear,* 138 Wis. 536, 120 N. W. 216, it was held:

In the case of an ambiguous law and construction thereof by administrative officers which is reasonable and practical, such practical construction is entitled to more or less weight in determining the intent of the lawmakers, and that where such practical construction had obtained for as long as fifty years it was entitled to controlling weight.

As has already been pointed out, the Standard Provisions Law has been enacted in sixteen states and a law very similar in its terms has been enacted in six other states. In none of these jurisdictions has the term "indemnities" been given the meaning contended for by the respondent. In addition to that fact, there was in existence in the state of Wisconsin at the time of the enactment of the Standard Provisions Law a large number of accident and health policies which contained valued benefit provisions. If it had been the purpose and intent of the legislature to limit the amount payable by the insurer under the policy to the loss actually sustained, it would seem, in view of the existing situation, that the legislature would have embodied such a statement in the law. The argument by the respondent is that the loss of a finger may be very great in one case and comparatively slight in another; for instance, if a great violinist should lose one of the fingers of his left hand the damage would be very great; on the other hand, if a bookkeeper, who wrote with his right hand, should lose one of the fingers of his left hand, the damage would be comparatively small. It is argued, therefore, that the policy may not contain a provision that the insurer will pay a specified amount in each case without regard to the loss actually sustained, but that he shall pay the actual loss, the amount of the loss to be determined after the injury is sustained, in accordance with the facts in each case. This argument is based upon the provision of the law already referred to in which the word "indemnity" is used and the further declaration that the statute provides for insurance against loss or damage, and unless, therefore, the insured or the beneficiary sustained a loss, an agreement to pay him an amount which conceivably may be greater than the amount of loss sustained by him is contrary to the law. In other words, that the parties may agree that the insurer shall pay the loss sustained but may not agree as to the extent or amount of the loss to be paid except by way of an option to be exercised by the insured.

It is quite as significant that the term "indemnity" is used in a sense equally consistent with the contention of relators in other clauses of the law.   In sub. (4) appears language limiting the amount of "indemnity" to a sum less than the amount stated in the policy.   The same language appears in par. (2) of the same subsection.   This would seem to imply that an amount certain might be stated.   In par. (2) (17) of sub. (4) reference is made to "the indemnity promised." By par. (4) of the same subsection three forms are provided, in which appear the language "Aggregate indemnity in excess of $——," the blank being intended for filling in of the promised or contractual indemnities referred to.   Par. (7), sub. (3), is also significant: "(7) A standard provision relative to filing proof of loss which shall be in such one of the following forms as may be appropriate to the indemnities provided;" meaning, of course, appropriate to the indemnities provided in the policy, and other similar provisions.

It further appears from the allegations of the complaint that the word "indemnity" has been used with reference to policies containing valued benefit clauses throughout the history of the health and accident insurance business and was so understood by the committee of the National Association of Insurance Commissioners who drafted the Standard Provisions Law and is so used in other jurisdictions.   It is quite apparent that it was so understood by the former commissioners of insurance and that meaning has also received judicial approval.   See *Commercial Acc. Ins. Co. v. Wells*, 156 Minn. 116, 194 N. W. 22; *Goldstein v. Standard Acc. Ins. Co.* 236 N. Y. 178, 140 N. E. 235.   The word has been used by this court in that sense.   In *Gatzweiler v. Milwaukee E. R. & L. Co.* 136 Wis. 34, 116 N. W. 633, it was held that the insurer did not have a right to be subrogated to a claim against a third party.   The court said:

"The case seems to turn on whether a contract of casualty insurance is one of indemnity like that of fire insurance.

While there is some conflict, by the great weight of author-
ity a life insurance contract is not of that kind but is strictly
a valued policy; a stipulation to pay a sum certain upon the
happening of a specified contingency. (Cases cited.) Under
such a policy the amount payable has no necessary relation
to damages actually suffered by the beneficiary. The in-
sured buys and pays for the right to have from another a
specified sum upon the happening of a specified event. Pay-
ment for the insurance is in the nature of an investment.
The money value of the thing covered by the insurance does
not enter into the transaction at all.

"A policy of casualty insurance, ordinarily, has much the
same features as one of life insurance, though, it is true, it
more nearly than one of life insurance has the indemnity
feature. The amount stipulated to be paid is a fixed sum as
to each particular injury specified or is computable without
any such definite data as in case of the loss of property."

This case was decided June 5, 1908, three years before
the enactment of the Standard Provisions Law. *Gatzweiler
v. Milwaukee E. R. & L. Co.* was affirmed in *Marshall-
Jackson Co. v. Jeffery,* 167 Wis. 63, 166 N. W. 647.

We hold both upon reason and authority that the use of
the word "indemnity" in the Standard Provisions Law in
the various sections referred to and other sections not spe-
cifically mentioned does not make a policy providing for
valued benefits for specific injuries inconsistent with the
Standard Provisions Law, or alter, vary, or contradict the
provisions of that law.

If, as is contended by the respondent, the forms of policy
have become so numerous and the provisions of policies so
intricate and involved as to work a hardship upon the in-
suring public, the power to provide a remedy lies with the
legislature and not with the commissioner of insurance. To
permit the commissioner of insurance, by re-interpretation
of the law as it has existed for more than a decade, to revo-
lutionize entirely the existing methods of doing business
under the Standard Provisions Law, would be to permit
him to exercise a power which the legislature, under *Dowl-*

*ing v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738, cannot delegate. It is probable that no system of policy forms will be devised which will entirely do away with controversies and friction between the insurer and the policy-holder. Certainly a system which prohibits the making of a policy having a valued benefit clause, leaving the amount of the loss sustained in each case to be determined by court or jury, will tend to increase rather than diminish the number of controversies. Nor are we aware of anything inimical to the public welfare in the established practice of naming specific amounts for specific injuries sustained. Apparently nothing of that kind has been discovered in other jurisdictions in which the Standard Provisions Law is in force; but whether there is or not, the whole matter is for the consideration of the legislature. The power to interpret and declare the law is primarily for the courts—the power to establish the law and declare public policy is primarily for the legislature. It is the duty of administrative officials to administer the law as established by the legislature and interpreted by the courts.

There remains one question for consideration. Sub. (2) provides:

"No such policy shall be so issued or delivered . . . (2) unless the time at which the insurance thereunder takes effect and terminates is stated in a portion of the policy preceding its execution by the insurer."

It is contended by the respondent that the practice of issuing a renewal receipt by the terms of which the policy is renewed from year to year is in violation of this section because the time when the insurance terminates is not stated in that portion of the policy preceding its execution by the insurer. It is the contention of the respondent that the policy may be issued for a term of years—say ten years— and a provision inserted that the failure of the insured to pay the premium for any year shall terminate the policy.

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.

It has been held by the New York court of appeals that a policy renewed under a clause similar to the one heretofore set out is a continuation of the original contract and not the making of a new one. *Hopkins v. Connecticut G. L. Ins. Co.* 225 N. Y. 76, 121 N. E. 465.

In *Steele v. Great Eastern C. & I. Co.* (Minn.) 197 N. W. 101, the supreme court of the state of Minnesota arrived at the opposite conclusion.

At the time of its issuance the policy complied with the statute. If the issuance of the renewal receipt results in the making of a new contract the law is also complied with. The statute quite evidently contemplates that there may be changes in the contract, and so a standard provision is as follows:

"No change in this policy shall be valid unless approved by an executive officer of the insurer and such approval is indorsed hereon."

It appears quite clearly that prior to the enactment of the Standard Provisions Law it had been customary to have the time of the beginning and the termination of the policy appear only in the application rather than in or attached to the policy itself, thereby affording greater opportunity for unauthorized changes and there was greater likelihood of the insured being misled. The purpose of the provision was to make clear to the insured the time his policy should take effect and terminate so as to prevent deception. The legislative purpose is fully accomplished by the issuance of the renewal receipt, which constitutes a change in the policy provided in the manner required by the statute and operates to extend the term for the agreed period. It appears without dispute that this practice has been followed not only in this state under the Standard Provisions Law but in other states where that law has been enacted, and no question has been raised as to the propriety of the practice, or claim made that it was in conflict with the Standard Provisions Law.

The policies contain a provision to the following effect:

"The whole policy expires one year from its date unless renewed. Renewal of the policy at the expiration of said original term or at the expiration of any renewal term shall be at the option of the company."

Taking into consideration the established practice continued over a long term of years and the construction placed upon the law by administrative officers not alone in this but in other states, a renewal of the policy in substantially the form set out in the case is a compliance with that clause of the Standard Provisions Law referred to. It certainly makes no greater change in a policy to provide for its renewal than it does to provide that it shall lapse upon the happening of a certain contingency. So far as responding to the purpose of the statute to prevent deception is concerned, the renewal of the policy from year to year seems less likely to deceive than a policy issued apparently for a term of years when it in fact by its terms may lapse at the end of any year. We hold that it is one of the changes in the policy authorized by the Standard Provisions Law; that is, a change in the date at which it expires. The change being executed in the manner required by the statute over the signature of the company, the statute is complied with, and by the change the termination is stated in a portion of the policy preceding the signature of the insurer. The renewal receipt becomes in legal effect a part of the policy and we need not determine whether the contract continues or a new contract comes into existence. Any change in a contract would in a strict sense make a new contract; in spite of that fact the contract might in other aspects be regarded as a continuing one.

We shall not attempt to take up and discuss in this opinion, which is already too long, all of the details of the valued benefit policies set out in the complaint and described in the stipulation. We have indicated the principles which should govern in determining whether or not a particular

State ex rel. Time Ins. Co. v. Smith, 184 Wis. 455.   Dissent.

policy alters, varies, extends, or contradicts the standard provisions and the optional standard provisions. It may be said generally that we find none of those set out in the complaint which vary, alter, extend, or contradict these provisions, and the fact that they provide for valued benefits and for a renewal from year to year by the issuance of a renewal receipt in substantially the form indicated affords no ground for the refusal of the commissioner of insurance to license the relators and others similarly situated or for withholding approval of policy forms submitted to him.

*By the Court.*—The demurrer to the complaint is overruled. Judgment for the relators is ordered in accordance with the prayer for relief and as indicated in this opinion. No costs to be taxed by either party.

The following opinion was filed June 21, 1924:

CROWNHART, J. (*dissenting*). This case comes up on a demurrer to a complaint in an original action in this court. Three actions under the statute were begun in the circuit court and are still pending there. A large amount of evidence was taken before the commissioner of insurance, which was transmitted to the circuit court in the action brought there. The parties stipulated that such evidence might be considered by this court if it should take original jurisdiction.

It is the contention of the defense that this court should not take jurisdiction, both on the ground of the statute (sub. (3), sec. 200.11) giving jurisdiction to the circuit court for Dane county being exclusive, and on the ground of discretion vested in this court. On both grounds I agree with the defense, and therefore dissent from the majority opinion. This I understand was the position of this court in the case of *State ex rel. U. S. F. & G. Co. v. Smith, ante,* p. 309, 199 N. W. 954.

The legislature has lodged large powers in the insurance commissioner to protect the public in insurance matters. This is in line with the legislative policy in this state and in many other states, to promote the public welfare through administrative justice rather than through the ineffective procedure of the courts in such cases.

Administrative justice is more and more recognized in recent years as a necessary corollary to court procedure. Administrative justice largely aims to prevent injustice by acting in advance of wrongs that may be perpetrated by bad methods, while courts are principally concerned in supplying the judicial remedy for the wrong done.   To illustrate: The industrial commission, by scientific rules of safety, seeks to prevent injuries to workmen, while the courts merely award damages for the injury that might have been prevented. The same is true of the insurance department.   It seeks to prevent injustice to the insured, in the first instance, instead of permitting a wrong and relegating the insured to the uncertain and incomplete remedies of judicial procedure.   And I think the courts should hesitate to control the actions of the commissioner except in case of absolute necessity and after a full hearing.   This court should not be called upon to decide cases involving unascertained facts, on pleadings, unless an actual necessity exists.   No such necessity exists in this case.   The circuit court has ample powers to maintain the *status quo* pending his decision.   It should be the function of the circuit court to find the facts and apply the law in the first instance.   This court may then intelligently exercise its original or appellate jurisdiction.

As I see the situation here, there is no reason for the exercise of our original jurisdiction.   The case is inadequately before us and we are not in possession of the information to render an intelligent opinion on so grave a matter.   The mass of evidence before us on stipulation has not been winnowed, considered, or discussed.   Only the

complaint, expertly drawn to present one side of the issues, is considered by the court.   Upon this a decision of far-reaching possibilities has been rendered.

For a very long time abuses have existed in insurance business.   This has been recognized by the courts, but they were helpless to remedy them.   They have strained the rules of law to curb them, to little effect.   These abuses were early recognized and graphically described in a powerful opinion in an early case.   *De Lancey v. Rockingham F. M. Ins. Co.* 52 N. H. 581.   Neither. could the legislature do much directly because of the intricacies of the problem. With the beginning of administrative justice the legislature welcomed the possibilities of relief by committing oversight of the business to the insurance commissioner with powers of administration that promised relief just in proportion as that administration is effective.   Now the companies fall back on the courts with their claim of "inherent right of contract."   It may be suggested that under our constitutional form of government the constitution is supreme, and "inherent. rights," except as they are recognized by the constitution and thereby become constitutional rights, do not exist.   Our constitution recognizes inherent rights by providing that the common law shall prevail until changed by the legislature, so "inherent rights" are subject to modification by the legislature within constitutional bounds.

The abuses I have referred to originally were largely the result of the policies being artfully constructed so as to deceive and trap the unwary public into believing they had insurance that appeared to be given them under one clause of a policy, and which was rendered nugatory by another clause.   Policies were made so intricate that they could not be understood either by layman, lawyer, or jurist.   The records of this court show that such abuses still exist. Others have been added.   The records here show that more than 5,000 policy provisions have been submitted for ap-

proval by the insurance commissioner in the last ten years. No one can suspect that all these are necessary in the public interest.   Health and accident insurance costs more than fifty per cent. of the premiums for overhead in this state. It is a poor investment.   Such excessive cost can hardly be justified in the public interest.   It may well be that the great diversity of insurance and policy forms, with the resultant competition on non-essentials, contributes to the excessive overhead and the general apathy of the public in this form of insurance.   There appears to have been widespread complaint to the insurance commissioner of failure of policy-holders to recover in cases of accident or sickness. The commissioner's effort to remedy the evil is at least praiseworthy in the public interest.

For these reasons I respectfully dissent.

The defendant moved for a rehearing.

In support of the motion there was a brief by *Daniel H. Grady* of Portage.

In opposition thereto there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys for plaintiff and relators, and a separate brief by *Olin & Butler* of Madison, attorneys for the *Metropolitan Life Insurance Company* and the *Travelers Insurance Company*.

The motion was denied, without costs, on October 14, 1924.