WISCONSIN TOWN MUTUAL REINSURANCE COMPANY, Appellant, vs. CALUMET COUNTY MUTUAL FIRE INSURANCE COMPANY, Respondent.

*December 10, 1936—March 9, 1937.*

110

For the appellant there were briefs by *Richmond, Jackman, Wilkie & Toebaas,* and oral argument by *Harold M. Wilkie* and *Charles H. Kennedy,* all of Madison.

For the respondent there was a brief by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox.*

The following opinion was filed January 12, 1937:

FAIRCHILD, J. Mutual reinsurance would necessarily carry with it liability for an assessment, the payment of which may be enforced by an action at law. The complaint in this case sets forth all facts which must be proved to sustain a recovery, including the fact that the defendant was a member liable to assessment. The trial court was of the opinion that certain formalities required by statute had not been duly observed. A reference to the decision and the findings in the circuit court shows that the central issue is as to defendant's membership in plaintiff and consequent liability for the assessment. All other objections on the part of the defendant may be readily disposed of once this question is settled. The evidence establishes that a policy of reinsuring defendant's

risks in a reinsurance mutual had been formed, and that the method by which that policy was to be carried out was definitely fixed in the minds of those who in a large measure were controlling the destiny of the defendant. The policy and the plan were fully disclosed to the individual members of the defendant and acquiesced in by them. The controlling facts are not in dispute. From the evidence of Mr. Kennedy, who is actively engaged in insurance work in connection with town mutual fire insurance companies, and who formerly was a deputy insurance commissioner of this state, the matter of organization of a mutual reinsurance corporation appears to have been under discussion by men interested in town mutuals and members of the insurance commissioner's staff for several years before any positive movement was gotten under way. He testified:

"This matter of organization had been in air for eight years; efforts had been made in previous years for purpose of organizing some means of protecting associations from excess losses."

The result hoped for by the organizers of plaintiff was the accomplishment of a reinsurance of town mutuals doing business in different localities which would tend to level off the losses and stabilize mutual insurance by protecting individual companies against excess loss. The plan was to pay member companies the amount, if any, that the reinsured company might be required to pay to its policyholders for losses in excess of an amount equal to one hundred twenty-five per cent of its average yearly losses during the preceding ten years. It is this liability of the plaintiff which forms the basis of the contract of reinsurance. The amount of the reinsurance risk is limited by the liability of the member company under the original policies, but the reinsurance risk is not for any specific risk of the insured company. Plaintiff refers to the contract between it and the defendant as a "stop loss contract."

The acts of the defendant relied on by plaintiff, as establishing in the first instance the necessary membership, are as follows:

Action by the board of directors on January 11, 1927; the minute book shows:

"A circular was presented and read by the secretary pertaining to the matter of joining a reinsurance company to be organized by different large town mutual insurance companies doing business in the state of Wisconsin, this circular being sent out by the secretary of the State Association of Town Mutual Insurance Companies. It was decided as urged that the same be brought to the attention of the members of the company at their annual meeting."

Action by the members of the defendant on January 12, 1927; the minutes of the annual meeting show:

"Proposed articles of incorporation and by-laws of the Wisconsin Town Mutual Reinsurance Company, as sent out by W. W. Gillies to organize if possible such a town reinsurance company was read by the clerk and discussed. On motion made and seconded that we appoint the president, secretary and vice-president as a committee and authorize them to communicate with similar committees to organize a state reinsurance company and if in their opinion a large enough membership is obtained and the articles of incorporation and the by-laws are suitable to them authorize them to sign up with such company at the time it may be organized. (Motion prevailed by unanimous consent.)"

Action by the two active members of the committee late in 1931 or early in 1932; the following application for membership in the Wisconsin Town Mutual Reinsurance Company:

"The undersigned hereby make application for membership in the Wisconsin Town Mutual Reinsurance Company, having been authorized so to do at a meeting of the policyholders of the Calumet County Mutual Fire Insurance Company, held at New Holstein, Wisconsin, January 12, 1927.

"The said policyholders having by a majority vote at said meeting adopted the following resolution:

"Resolved: That the board of directors of this company are hereby authorized and directed to apply for membership

and become a member of the Wisconsin Town Mutual Re-insurance Company.

"For the resolution—43 votes.

"Against the resolution—0 votes.

"Jas. G. Griem, *President.*

"Louis W. Hipke, *Secretary.*

"It is further agreed and understood that the said Calumet County Mutual Fire Insurance Company is participating in all the rights, powers and privileges conferred by the said Wisconsin Town Mutual Reinsurance Company and will pay any assessment or assessments duly made by it for the purpose of paying its losses and expenses incurred as such company.

"Jas. G. Griem, *President.*

"Louis W. Hipke, *Secretary.*

"*Calumet County Mutual Fire Insurance Company.*"

When the committee was first appointed in 1927, Mr. Breed was president of the defendant. He retired shortly after and his services ended because of illness. His incapacity evidently came to the attention of the membership of defendant, for at the annual meeting in January, 1929, he was not re-elected to the board of directors and the directors subsequently named him an honorary member of their board. Mr. Griem and Mr. Hipke, the two remaining members of the committee, proceeded with the discharging of the commission, and, after a series of negotiations, a meeting of town mutuals was held February 7, 1931, at which defendant was represented by Mr. Hipke. On November 3, 1931, what may be termed the final meeting of the representatives of town mutual fire insurance companies proposing to form the plaintiff, as a reinsurance company, was held. The plaintiff was then organized, and defendant was one of the organizers, signing the articles of organization by Mr. Hipke, its secretary, and the application quoted above was submitted. The activity of the representatives of defendant in bringing about the organization of plaintiff and the participation in such organization is amply established by the testimony of

the secretary and others, and, unless there was a failure to comply with some particular formality which, under the law, is requisite to the acquisition of membership, it must be held that the defendant is a member. The statutes disclose a legislative purpose to encourage co-operation among the management of town mutuals, and, evidently in the belief that this scheme would work for the ultimate good of all concerned, the legislature provided that at least nine in number of any town mutual fire insurance companies organized under the laws of this state and collectively carrying fire insurance risks aggregating not less than $10,000,000 may form themselves into such a corporation as the plaintiff is, for mutual reinsurance against loss or damage by fire or lightning. Sec. 202.19, Stats. 1927, provides for the authorization of membership before the organization of the mutual reinsurance company. It specificly authorizes the secretary fully to represent the joining company in all matters. The section, renumbered, is 202.16, Stats. 1929, and, while changed in some particulars, there was no disturbance or change in the provision that membership in a mutual reinsurer might be authorized prior to the organization of such reinsurer. The section reads:

"Any town mutual fire insurance company may, at its annual meeting, or at a special meeting called for that purpose, vote to become a member of a reinsurance corporation to be organized under this chapter. The secretary, or in case of his inability, the president, of such town company shall thereupon be authorized to represent it in organizing a reinsurance corporation; and shall in all matters represent his company in said reinsurance corporation."

See also secs. 202.15, 202.17, 202.18, Stats.

The learned trial judge was of the opinion that, after the organization of the reinsuring company, full membership could only be attained by a second vote of the members of the joining company, but a consideration of the statutes referred to compels the conclusion that a town mutual can become a charter member of a mutual reinsurance corporation. The membership of the company first to join becomes effec-

tive as soon as the last of nine companies enters into the association. At least nine companies must necessarily be charter members, and, as soon as the organization of the reinsurance company is completed, the member companies are entitled to the benefits and are burdened with the obligations of membership in a mutual insurance company, including, of course, the obligation of the member to be liable for assessment, for in mutual insurance companies membership must be accompanied by insurance. *Huber v. Martin,* 127 Wis. 412, at p. 429, 105 N. W. 1031, 105 N. W. 1135; *Wilson v. Trumbull Mut. F. Ins. Co.* 19 Pa. St. 372, at p. 375; 1 Couch, Cyc. Ins. Law, p. 491 *et seq.,* § 234.

We reach the conclusion that the trial court was in error in its construction of the statutes referred to, and that the so-called second vote was not required under the circumstances of this case; that the original authorization was broad enough to warrant the secretary in doing what he did, and that the requirement that there be further proceedings of the nature contended for by defendant would result in the charter members of the reinsuring company, already reinsured, applying to themselves for reinsurance. The purpose of the defendant evidenced by the declarations of its members, its directors, and officials, was to become a part of the plaintiff organization. Does any technical failure exist of sufficient consequence to break the line between the purpose and the resulting membership? Only if it results from the circumstance of Mr. Breed's illness and consequent inability to take part in the proceedings of the committee. The fact that Mr. Breed did not act is one of the bases of defendant's claim that it never entered into the status described as that of a "constituent member." It is urged that the evidence shows that this committee never took any action as a unit. There was some considerable measure of discretion as to the matter of organizing the plaintiff reposed in this committee, but it was a committee dealing with affairs concerning which a majority could act. And there is no doubt under this record that the

majority did enter into the organizing of plaintiff and, so far as they could, made their principal, the defendant, a member. The evident familiarity of defendant with the condition of Mr. Breed, together with its knowledge that the committee would have to act without him, indicates an approval of the course followed. Authority to enter into contracts may be delegated to a committee, of which a majority of the committee is sufficient for action, and, where notice of meetings has been given, and a fair course of conduct has been pursued, the acts of the majority bind the committee and the corporation. *Black River Improvement Co. v. Holway,* 85 Wis. 344, 55 N. W. 418; *Canada-Atlantic & Plant S. S. Co. v. Flanders* (C. C. A.), 145 Fed. 875, at p. 880; 4 Cook, Corporations (8th ed.), p. 2979, § 715; 2 Thompson, Corporations (3d ed.), p. 769, § 1310. It is unnecessary, however, to labor this matter further, for the decision does not rest here. If there were any defect in the execution of the authority conferred on the committee by the members of defendant company at the annual meeting of January 12, 1927, or any defect in the manner in which the affairs of the committee were carried on, such defect was fully waived by acquiescence on the part of the members of the defendant. The acts of the defendant from November 3, 1931, to its withdrawal in September, 1933, with relation to its membership in plaintiff were such as to show an intention to be a member and a complete ratification of all that was done by its representatives Griem and Hipke.

The facts showing ratification of the acts of its representatives appearing in the proceedings of the defendant at its meeting January 13, 1932, and subsequently, are as follows. There appears in the minutes :

"The matter of reinsurance of the company's risks by having joined the Wisconsin Town Mutual Reinsurance Company and stabilizing mutual insurance was presented to the members, explained and discussed."

Hipke testified that that was the report to the members of the application for membership in plaintiff by himself and Griem; that there was explanation and discussion, but no objection. Subsequently, Hipke, in January, 1932, acknowledged by letter the notice of a meeting of the members of plaintiff; on December 12, 1932, he sent in a statement of losses on which to base a claim for benefits; early in 1933 he sent in a further statement of losses. In February, 1933, a notice of assessment was sent out by plaintiff. Mr. Hipke later submitted proof of further losses of defendant for 1932. In June another notice of assessment was sent out. In September defendant sought legal advice as to its liability for the assessment, and was told that it could not assess its members to pay the assessment required by plaintiff. On September 19, 1933, defendant's board of directors voted that defendant "withdraw its membership of the Wisconsin Town Mutual Reinsurance Company." Defendant first sought to repudiate the actions of its representatives after more than a year of failure to object, accompanied by acts indicating an intention to be reinsured and to avail itself of the benefits of membership. If it be true that the acts of Griem and Hipke in joining in organizing and applying to plaintiff for membership did not bind the defendant at that time, the conduct of defendant thereafter amounted to an implied ratification. *MacLeod v. Washburn,* 178 Wis. 379, 190 N. W. 124; 4 Fletcher, Cyc. Corp. (1st ed.) §§ 2177, 2178; *Ibid.* (Rev. ed.) pp. 765–769, §§ 750–752.

As to the defendant's contention raised by the amendment to the answer that secs. 202.15 to 202.18, inclusive, Stats., are unconstitutional and void as to the contracts of members of defendant company, we are of the opinion that there is no invasion of the rights of individual members or of the defendant, nor violation of any constitutional provision. There was no particular effort to show what policies of defendant company were in force before these statutes were passed, and

contracts made after that time must have been made in contemplation of the statutes. Furthermore, the policies in evidence show that the insured has agreed to pay his share of "all losses that may happen by fire or lightning to the property of the members insured in this company, and other necessary expenses agreeable to the charter and by-laws of the company, and statutes of the state." The practice of reinsurance has existed for many years. It is an incident of the insurance business and is quite uniformly regarded as a normal practice. Under the statutes of this state and the charters of the companies here involved, the power to make the particular arrangement exists, and assessments which may call for contributions from companies which are members of reinsurance mutuals fall within the scope of "necessary expenses agreeable to the charter and by-laws of the company, and statutes of the state."

The contract into which defendant entered provided that in the event it failed to respond to any of its legal obligations due to plaintiff, and particularly assessment, it would pay the costs of collection. The contract governing this item appears to be a proper one and the item of attorney's fees must be a part of the recovery. The judgment must necessarily provide for this item of costs which has been made necessary by the act of the defendant in refusing to pay the assessment which it was bound to pay. The terms of the contingent contract were shown in the trial below to be reasonable, and therefore in addition to the assessment and interest the plaintiff must recover thirty-five per cent of that amount as attorney's fees.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant judgment for plaintiff for the amount of the assessment and interest and the costs of collection according to the contract.

A motion for a rehearing was denied, with $25 costs, on March 9, 1937.