DUEL, Commissioner of Insurance, Respondent, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

*November 7, 1941—March 13, 1942.*

For the appellant there were briefs by *Ekern & Meyers* of Chicago, Illinois, and *Rieser & Mathys* of Madison, attorneys, and *R. M. Rieser* of Madison, *Frank T. Boesel* of Milwaukee, *Herbert H. Naujoks* of Chicago, Illinois, and *James J. Kerwin* of Milwaukee of counsel, and oral argument by *Mr. Rieser, Mr. Boesel, Mr. Naujoks,* and *Mr. Erwin A. Meyers.*

For the respondent there were briefs by the *Attorney General* and *N. S. Boardman,* assistant attorney general, and oral argument by *Mr. Boardman.*

The following opinion was filed January 13, 1942:

WICKHEM, J. It is plaintiff's contention that defendant's methods of conducting its business are unlawful under the Wisconsin statutes, and that under sec. 201.34, Stats., plaintiff has the power and the duty to refuse to renew defendant's license. The principal controversy rages about defendant's exaction, in addition to the charge which it denominates a "premium," of a membership fee for which it purports to give no insurance and in respect of which it sets up no reserves. The methods of business of defendant, and particularly the membership-fee plan, had apparently constituted the basis for objections to the licensing of plaintiff for a number of years

prior to 1939, but the application for a license not having been pressed until that year, no determination was made by the insurance commissioner until that time. After an investigation by field agents, Mr. Mortensen, who was at that time insurance commissioner, granted defendant a license and filed a memorandum disposing of the objections to defendant's practices favorably to defendant.

It will be convenient at the outset to consider and deal with, defendant's claim that plaintiff had neither power nor jurisdiction to decline to license defendant. Defendant relies upon the following rules:

(1) That the insurance commissioner has only such powers as are conferred by statute and that these must be found within the four corners of the statute. *Union Indemnity Co. v. Smith,* 187 Wis. 528, 205 N. W. 492; *State ex rel. Wis. Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929; *Milwaukee v. Railroad Comm.* 206 Wis. 339, 240 N. W. 165.

(2) That a foreign corporation may conduct its business in any manner not limited or prohibited by statute. *State ex rel. Time Ins. Co. v. Smith,* 184 Wis. 455, 200 N. W. 65; *State ex rel. Ornstine v. Cary,* 126 Wis. 135, 105 N. W. 792.

(3) That limiting statutes in this field are to be strictly construed. *State ex rel. Wis. Inspection Bureau v. Whitman, supra; Northwestern Nat. Ins. Co. v. Mortensen,* 230 Wis. 377, 284 N. W. 13. These rules are not disputed by plaintiff and call for no extended consideration here.

Defendant claims that plaintiff has been given no statutory power to withhold defendant's license and that his actions are arbitrary and void. Sec. 201.34 (1), Stats., provides as follows:

"(1) The commissioner shall upon being satisfied by investigation that any insurance company applying for license or relicense has fully complied with all provisions of law, and that its methods and practices in the conduct of its business and the character and value of its assets are such as to safe-

guard the interests of its policyholders and the people of the state, issue to such company a license to transact business in this state, and shall renew the same from year to year so long as such company shall meet all requirements of law; and shall give to every agent of such company a certificate that such company has complied with all the provisions of law and is authorized to transact business in this state, which license to the company and certificate to agents shall continue in force until the first day of May next after the effective date thereof, unless sooner revoked."

In our opinion this plainly vests in the insurance commissioner power to refuse to license or to relicense an insurance company in any case where applicant or licensee has failed to comply with all provisions of the law, and particularly where its practices and methods are definitely illegal under the statute. Plaintiff also claims that it vests in the commissioner a discretion to determine whether the practices of an applicant or licensee, although not so within any express statutory prohibition, are of such a character as not properly to safeguard the interests of its policyholders and those of the people of the state, but in view of our ultimate conclusions we deem it unnecessary to examine or to determine this point. If the practices of a company are unlawful the commissioner has not only the power but also the duty to decline to issue a license or to renew one.

Since the principal controversy has to do with the unlawfulness of defendant's life-membership-fee plan, the nature of that plan and its lawfulness under the statutory provision ought first to be considered.

Under defendant's plan for writing insurance, each policyholder upon becoming such, is required to pay a separate membership fee for each general class or kind of automobile insurance which he then or thereafter may purchase. This fee is considered by defendant to be wholly separate and distinct from the premium charged in connection with the policy purchased. The fee varies with the type of coverage and the territory in which the applicant resides or does business.

There is a minimum fee for comprehensive coverage of $2 and a maximum fee of $10 for collision coverage. Once a membership is paid for any given coverage it is never required to be paid again, although the insured may later change the cars to which the policy applies or drop and later reinstate his insurance. The policy provisions in respect of this fee are as follows:

"MUTUAL CONDITIONS.

"Membership. The membership fees set out in this policy, which are in addition to the premiums, are not returnable but entitle the named insured to insure one automobile for the coverages for which said fees were paid so long as this company continues to write such coverage and the insured remains a desirable risk."

Defendant claims that under its scheme every applicant pays at the outset of his relations with the company the entire costs of establishing his eligibility to insure in the company, thereby relieving existing policyholders from this expense and reducing the general cost of insurance. It is asserted that this enables defendant, by reducing general expenses, and particularly the sales costs, to charge lower premiums, and that the premiums are frequently from twenty per cent to thirty-five per cent lower than the conference rates. Defendant claims that the membership fee results in no liability to the policyholder to which a reserve would be applicable because no insurance is purchased with it but merely the privilege of continuing to be insured or reinsuring at the low rates charged by defendant and made possible by the exaction of the membership fee. This view was concurred in by the former insurance commissioner when the company was licensed.

In general, the attack upon the membership-fee plan by plaintiff is that defendant has in effect simply split up an ordinary premium, calling part of it a membership fee, to which certain expenses of insurance are allocated. Plaintiff insists that for all purposes of the Wisconsin statutes the membership fee must be considered part of the premium and

that so considered the policy written by defendant violates statutes regulating insurance contracts generally and particularly those having to do with reserves.

We first consider plaintiff's contention that the membership-fee plan is in violation of reserve requirements of secs. 201.18 (1) and 204.27, Stats.   Sec. 201.18 (1) provides:

"The unearned premium or reinsurance reserve for every insurance company when no other statutory provision is made therefor, shall be computed by the commissioner by setting up fifty per cent of the premiums received on all risks that have one year or less to run, and *pro rata* of all premiums on risks that have more than one year to run.   In the case of perpetual risks or policies, the whole amount of premium paid shall be set up as a reserve. . . ."

Sec. 204.27, Stats., provides:

"In computing the reserve liability of casualty insurance and surety corporations the commissioner shall make such calculations as in his judgment are equitable and just to both policyholders and the company; provided, that such liability so determined shall not be less than fifty per cent of the premiums written in the company's policies."

Sec. 204.12 (1), Stats., which a revisor's note states has probably superseded sec. 204.27, relates to surety-company reserves and provides:

"(1)  Every surety corporation shall at all times keep and maintain:

"(a)  An unearned premium reserve of fifty per cent of the current annual premiums upon all outstanding suretyship obligations; provided, that the commissioner, in estimating its condition, may charge it with a premium reserve equal to the unearned portions of the gross premiums charged, computed on each risk, from the date of the issuance of such suretyship obligation; and

"(b)  A loss reserve at least equal to the aggregated estimated amount of all losses and claims of which the corporation has received notice, and the estimated liability on any known

event which may result in a loss, and the estimated liability for all losses which have occurred but on which no notice has been received."

These sections are claimed by plaintiff to indicate that the uniform minimum yardstick of reserves in liability, casualty, and surety types of policy is a specified percentage of premiums, and that by dividing a premium into separate items designated "membership" fees and "premium," respectively, defendant avoids setting up a reserve sufficient to meet the statutory requirements.

We are thus met at the outset with the fundamental dispute, whether the membership fee is a wholly separate and distinct matter, or in fact, nothing more than a splitting of the premium. We are of the view that plaintiff's contention is sound. The membership fee is the result of a separation by defendant of certain expenses connected with the sale to, or acquisition by, the insured, and the recapture of this amount by a separate fee. The balance of the charge is denominated a premium and is concededly lower than the conference rate for similar protection. While it is claimed that other economies contribute to the low rate, it is not denied that a substantial factor is the exaction of the membership fee. It is claimed that the membership fee entitles insured to no insurance; that all insurance protection is in consideration of the separate premium. The fact remains that a person may not become insured without paying the membership fee and that the membership fee defrays expenses customarily allocated to premium in the writing of insurance. We are unable to avoid the conclusion that such an exaction is a splitting of the premium as that term is used in the statutes.

We are at once met with the argument that there is no liability upon the part of the company to which an unearned-premium reserve can possibly be applicable; that what is purchased by the membership fee is a right or privilege by the insured, so long as he lives and remains a desirable risk, to

reinstate or continue his insurance; that by the very nature of the contract this privilege may neither be canceled by the company nor surrendered by the insured, and that the fee for the privilege is necessarily earned at the outset, or in any event, cannot be computed or spread over an extended period.

This contention would present some difficulties if we were to hold that the default of defendant was simply a failure to set up an unearned-premium reserve against the membership fee. The difficulties of doing this are well put by defendant. By its terms, the privilege is immediately and irrevocably given and if not earned at once, it is of such a nature as to make the calculation of proper reserves difficult, if not impossible.

In our opinion, this points, not to a statutory purpose to exclude membership fees from reserve requirements, but to the fact that the statute does not permit payments exacted to cover the cost of insurance to be so split as to have part of them exacted in return for a privilege of this sort. To permit this would foreclose the maintenance of adequate reserves. Therefore, we hold that the premium must include the normal and usual expenses of furnishing insurance protection; that the statute requires that the consideration for the premium shall be insurance protection and not extraneous privileges of the sort here given by the membership fee. Thus, it is not only the statutory purpose to include in the term "premium" all sums which must be paid before insurance protection is granted and which are exacted to defray the cost of insurance protection, but it is contemplated that in return for this premium insurance protection be given which is susceptible of periodic measurement when the insurance is for a definite term. It cannot have been the statutory intent to permit insurance companies to allocate a portion of the expenses of doing business for some sort of privilege and to designate the rest of the cost of insurance a premium. To do this would put it within the power of insurers to set their own reserve requirements by redefining "premium." The situation is not helped by so arranging the contract that the fee carries no insurance or

other liability. This destroys the statutory scheme for reserves quite as effectively as any other plan for splitting the premium.

In addition to the foregoing considerations, it is conceded that for many of defendant's purposes and reports, membership fees are considered "premiums." Thus, they are included as gross premiums in several of its reports. Further than this, the membership fee to some extent varies according to the territory and type of risk involved. These circumstances seem to us of more than makeweight importance in deciding that the membership fee is simply a part of the premium arbitrarily separated and given a distinct name. The plan is ably defended in appellant's briefs, as a convenient and just method of charging to each person at the outset the sales and acquisition costs of his own insurance, thus reducing sales costs and effecting general economies which, without undermining the soundness of the insurance, produce lower costs and are reflected in lower premiums.

We do not assert that defendant's plan was for the purpose of evading statutory reserve requirements, and we have no reason to suppose that it was. We are not in a position to appraise its general soundness. Such an appraisal would necessitate consideration of many difficult and technical insurance problems that are not involved here in view of our conclusion that the practice of selling insurance under the membership-fee plan is in violation of the reserve requirements of the statutes.

Defendant's contention that, assuming defendant's plan to result in inadequate reserves, the insurance commissioner has no power to refuse renewal of a license must also fail. The bases of this contention are, (1) that plaintiff nowhere has contended that defendant is insolvent or that it has insufficient assets to meet its obligation and that no such contention could successfully be made; (2) that under secs. 201.18 (1) and 204.27, Stats., the commissioner is vested with the power and duty of making such calculation and requirements as to reserves as in his judgment "are equitable and just to both

policyholders and the company." We do not deem the first contention sound. It is clear to us that the question under the reserve sections is not the general soundness of a company or the sufficiency of its assets, but whether the insurance plan of the company is in violation of the statutes.

With respect to the contention that the commissioner has power and discretion to fix adequate reserve requirements, the same comment is applicable. The difficulty with defendant's position is that its plan as a whole is violative of the statutes in respect to reserves because it splits its premium, and in return for part of the premium, sells a privilege to which reserves are either inapplicable, or in respect of which it is impossible to compute them. The commissioner, under these circumstances, can do nothing but disapprove of the company's entire plan of writing insurance, because he is not in a position to remake the plan or contract and to substitute for the life-membership privilege some advantage to the insured to which unearned premium reserves would be applicable. We are fortified in this conclusion by the provisions of sec. 203.12, Stats., relating to the compulsory return of unearned premium. This section provides, in substance, that any company transacting business of insuring property against loss or damage from any but specified causes must, upon cancellation of the policy, and upon request of the party insured, return the premium, less the earned premium for the expired portion of the full term. There follow tables specifying the rate on policies for less than a year and for those written for periods of more than a year.

In our opinion, this section, in connection with those relating to unearned-premium reserves, indicate a plain statutory purpose that the costs of furnishing insurance shall be collected by a charge known as a "premium;" that reserves shall be set up against this premium, and that specified portions of the premium indicated in the statutory tables shall be returned as unearned upon cancellation of the insurance.

It is impossible to repel the implication from all this that the amount exacted to cover the cost of insurance shall buy insurance protection which may be so measured that the unearned portion of the premium deposit may be ascertained and returned.

In this connection, merely as fortifying the conclusion that the statutes leave no room for the exaction of such a membership fee as defendant includes in its insurance plan, we cite the fact that a domestic mutual company could not write insurance upon this plan. Sec. 201.02 (3) (d), Stats., relating to the organization of mutual insurance companies, provides:

"(d) The condition of membership which shall provide that each policyholder have one vote and shall be liable for a *pro rata* share of losses and expenses incurred during the time the policyholder has been a member of the company, unless the liability of all members is limited according to law."

It is held in this state with respect to domestic mutual companies that those who at any given moment hold policies in such a company are the only members of the corporation and that membership and insurance are coterminous. *Huber v. Martin,* 127 Wis. 412, 105 N. W. 1031, 105 N. W. 1135; *Kennan v. Rundle,* 81 Wis. 212, 51 N. W. 426; *Zinn v. Germantown Farmers' Mut. Ins. Co.* 132 Wis. 86, 111 N. W. 1107; *Wis. T. M. R. Co. v. Calumet C. M. F. Ins. Co.* 224 Wis. 109, 271 N. W. 51.

Defendant replies that the state of Wisconsin has no control over the charter powers of foreign corporations and that since sec. 201.02 (3) (d), Stats., deals with the corporate powers of domestic insurance corporations, it is of no materiality in determining what sort of business defendant may write in this state. We do not deem it necessary, in view of our other conclusions, to answer this contention. We merely direct attention to the fact that whatever the source of the prohibition, a domestic mutual may not write insurance based upon a membership-fee plan because it is the insurance that makes insured a member of the company and no other charge

may be exacted for membership. In our opinion, a domestic corporation may not, in any event, exact a fee entitling the insured to privileges which survive the lapse of the policy, since insurance and membership are required to be coterminous. Sec. 201.34 (3) provides:

"A licensed foreign insurance corporation may transact in this state only such kinds of business as, under the laws of this state, a like domestic insurance corporation is authorized to transact."

Plaintiff contends that sec. 201.34 (3), Stats., operates to prohibit the writing of insurance under defendant's plan, for the reason that it is a kind of insurance prohibited to domestic mutual insurance companies. We are clear enough that a domestic mutual may not write insurance upon the plan adopted by defendant. It is more doubtful, however, whether the term "kinds of insurance" does not, as claimed by defendant, refer to fire, accident, theft, and other types of insurance listed in sec. 201.04. Defendant makes a persuasive argument to that effect, and there seems to be some support for that in the statutes. For example, sec. 201.05 (1) provides:

"Companies may be formed upon the stock or the mutual plan to transact any *kind* of insurance authorized by section 201.04."

Sub. (2) of the same section provides:

"No company shall be formed for the purpose of engaging in any other *kind* of insurance than that specified in some one of the subsections of section 201.04, or more *kinds* of insurance than are specified in a single subsection. . . ."

We do think, however, that disabling the domestic mutuals from writing insurance upon the plan offered by the defendant fortifies the conclusions based on the sections relating to reserves and the return of unearned premiums that the plan of defendant is wholly inconsistent with, and violative of the general scheme of the statutes. The use of small policy fees by town mutuals which are not under any reserve require-

ments, or the exaction of fees for social privileges in fraternal organizations, which are something more than mere insurance companies, has obviously no bearing upon the question.

Other attacks upon the validity of defendant's plan are based upon claimed violations of sec. 201.02 (5), Stats., having to do with limitation of liability of members of a mutual to a specified number of times the annual premium. Sec. 204.32, dealing with discrimination in rates, and sec. 201.135, relating to the declaration of dividends. These points need not, in our opinion, be determined, except to the extent that they may be affected by our conclusion that the premium may not be split and a separate membership fee exacted as was done by defendant.

We pass over, as relatively inconclusive, the contention based on asserted administrative interpretation of the statutory requirement by the insurance department, and we are of the view that the order of this court in the *Workmens Insurance Case* is not of any consequence in supporting plaintiff's conclusions. The permission to commence an original action recognized the importance of the question, but did not prejudge it. We are not persuaded that legislative proposals to authorize defendant's manner of doing business tend to support either plaintiff's or defendant's contentions.

In view of these conclusions, we deem it unnecessary to discuss the extent of plaintiff's discretion on the hypothesis that no parts of defendant's plan are violative of specific provisions of the statute.

Defendant urges that the determination of plaintiff's predecessor in office to license defendant is *res adjudicata* as to the issues involved in this action. It is defendant's claim that where a license is granted to an individual or corporation, and in reliance upon this the licensee expends large sums of money, the action of a commissioner in finding that the individual or corporation is entitled to a license is final and may not later be revised upon the same facts, citing among other cases,

*Woodworth v. Kales* (6th Cir.), 26 Fed. (2d) 178; *United States v. Kaufman,* 96 U. S. 567, 24 L. Ed. 792; *State ex rel. Schuster Realty Co. v. Lyons,* 184 Wis. 175, 197 N. W. 585, 199 N. W. 48; *Tait v. Western Maryland Ry. Co.* 289 U. S. 620, 53 Sup. Ct. 706, 77 L. Ed. 1405; *Penrose v. Skinner* (D. C.), 278 Fed. 284, 298 Fed. 335. We do not consider that the doctrine of these cases goes any further than the following statement from the *Penrose Case, supra,* indicates (p. 337) :

" . . . no one will contend that a succeeding commissioner could overrule or ignore the decisions of his predecessor, unless such decisions were in law erroneous or tainted with fraud [or mistake]. Any other conclusion would bring chaos in governmental administration and cause untold annoyance to our citizens."

The extent of the power of an administrative body or agency to reconsider its own findings or orders has nothing to do with *res adjudicata;* the latter doctrine applies solely to courts. See *Lange Canning Co. v. Industrial Comm.* 183 Wis. 583, 197 N. W. 722; *Hinrichs v. Industrial Comm.* 225 Wis. 195, 273 N. W. 545; *Maryland Casualty Co. v. Industrial Comm.* 230 Wis. 363, 284 N. W. 36. Whatever limitations there are upon the right of an administrative agency to reconsider issues of fact involved in granting a license, a subsequent commissioner is not foreclosed from entertaining a different view of the law from that held by his predecessor. That is the situation here.

It is contended that the procedure adopted by plaintiff in his order or proposed order of 1940 and written order of 1941 constitutes a denial of due process and a violation of the Wisconsin and United States constitutions. This is upon the ground that the action was taken by plaintiff without hearing or opportunity to defendant to argue the facts or law applicable to its right to a license for the two years in question. It is conceded by defendant that the order for the year 1940 is moot

and clearly this is true. In 1941, however, there was a seasonable application for a renewal of license for the succeeding year. This was followed by a notification by plaintiff that he intended to refuse to renew defendant's license. Within five days defendant commenced its second action in the United States district court for the Western district of Wisconsin to enjoin plaintiff from interfering with its business in this state, and to require plaintiff to issue a renewal license for the period ending April 30, 1942. The formal order was entered on May 5, 1941. Sec. 200.11, Stats., contains a complete and adequate procedure for reviewing orders of the insurance commissioner. Those affected by these orders and aggrieved by them may ask for a hearing or review before the commissioner and this hearing is required to be within ten days unless the petitioner requests otherwise. The final order is to be made within three days after the close of the hearing. There is provision for review of this order on rehearing before the circuit court. Certainly, the statute adequately secures to defendant due process of law, and it is evident from the record in this case that defendant made no effort to pursue the statutory remedy which would have been effective to gain for it the hearing that it now claims to have been deprived of. Under these circumstances, we are not in a position to hold that defendant's constitutional rights have been in any way impaired. Defendant's choice of remedies was doubtless due to the fact that essentially its dispute with plaintiff was one of law involving the construction of statutes dealing with the commissioner's powers and regulating the manner in which insurance business is to be conducted within the state, and it was doubtless considered by defendant that the question might better be finally and authoritatively determined by a court of competent jurisdiction, rather than by plaintiff who already entertained a considered opinion in the matter.

The final contention is that the circuit court for Dane county was and is without jurisdiction in the premises. It is con-

tended, (1) that by reason of the actions in the United States district court, heretofore referred to, the jurisdiction of that court attached and is not to be taken away or interfered with by proceedings instituted in a Wisconsin court; (2) that the action in the federal court did not involve the constitutionality of any Wisconsin statute, and hence under the provisions of the Federal Code, section 266, 28 USCA, § 380, there is no authorization for the prosecution of an action in the state courts. Section 266 of the Judicial Code (28 USCA, § 380) provides:

"No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a state by restraining the action of any officer of such state in the enforcement or execution of such statute, or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such state, shall be issued or granted by any justice of the supreme court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the supreme court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the supreme court or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application. . . .
"It is further provided that if before the final hearing of such application a suit shall have been brought in a court of the state having jurisdiction thereof under the laws of such state, to enforce such statute or order, accompanied by a stay in such state court of proceedings under such statute or order pending the determination of such suit by such state court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the state."

Defendant contends that it did not, in the federal actions, seek to question the constitutionality of the Wisconsin insur-

ance statutes here involved, and that, particularly, it did not seek for a determination by a three-judge court; that section 266 of the Judicial Code applies only when a temporary injunction to restrain an administrative order is sought and then only if the ground of attack is that the statute under which the order is made is unconstitutional. *Ex parte Bransford,* 310 U. S. 354, 60 Sup. Ct. 947, 84 L. Ed. 1249; *Phillips v. United States,* 312 U. S. 246, 61 Sup. Ct. 480, 85 L. Ed. 800, are cited to the point that it is necessary under this section, even to distinguish between a petition for injunction on the ground of unconstitutionality of a statute which requires a three-judge court and petition that seeks an injunction on the ground of the constitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional, in which case the determination does not require a three-judge court.

Having sought the intervention of the federal court in advance of any formal administrative order defendant claims not to have been seeking to enjoin the enforcement of any order. In addition to this, it claims not to have attacked the constitutionality of the insurance statutes under which plaintiff's orders were made, that it made no case for a three-judge court, and that there is no authority under section 266 of the Judicial Code for plaintiff to commence an action in the state court to enforce his order or to have a stay in federal court of the proceedings there. According to defendant, the matter is not helped by the fact that a subsequent formal order was entered by plaintiff, because the case must be tried in the state court upon the facts as they existed at the time of the federal action. *Northwestern Bell Telephone Co. v. Hilton* (D. C.), 274 Fed. 384.

We are persuaded that in this case, we are not concerned either with section 266 of the Judicial Code or with the question whether a three-judge court was asked for or could properly be convened to try defendant's actions. It appears to

us from a consideration of the case of *Railroad Commission of Texas v. Pullman Co.* 312 U. S. 496, 61 Sup. Ct. 643, 85 L. Ed. 971, that irrespective of the provisions of section 266 of the Judicial Code, refusal by the federal court to entertain a suit to enjoin administrative action by a state officer until a definitive construction of the statute by the state courts could be had is not only the exercise of a proper discretion but, indeed, that for the federal court to entertain and decide such a case even with the consent of the parties would be reversible error. As we read the *Pullman Case* the decision is put upon considerations of judicial policy which a federal court sitting as chancellor is bound to take into account in exercising its discretion. The discretion is circumscribed by the following statements of policy in the *Pullman Case* (p. 500) :

"Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law . . . or the administration of a specialized scheme for liquidating embarrassed business enterprises . . . or the final authority of a state court to interpret doubtful regulatory laws of the state [citing cases]. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise' discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary."

Once the operation of section 266 of the Judicial Code is eliminated, we do not deem the absence of a formal order by plaintiff at the time of commencement of the federal action a matter of any importance. In spite of contentions to the contrary in the brief of defendant, an examination of the complaint in the federal court discloses that defendant sought there to restrain plaintiff as commissioner of insurance from interfering with the business of defendant during the period for which a license was denied. It further appears that the basis for the action was that plaintiff, as commissioner, with-

out power and authority, and contrary to the law of Wisconsin, was denying defendant a license and threatening to take steps to the disadvantage of defendant. The trial of the action in federal court would require the federal court to undertake precisely such a construction of the Wisconsin statutes as we have made upon this appeal, and to adopt the language of the *Pullman Case, supra* (p. 499) :

"But no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination. The last word on the meaning of article 6445 of the Texas Civil Statutes, and therefore the last word on the statutory authority of the railroad commission in this case, belongs neither to us nor to the district court but to the supreme court of Texas. In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication [citing cases]. The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication."

In this connection see also *Green v. Phillips Petroleum Co.* (8th Cir.) 119 Fed. (2d) 466. This case followed in point of time the *Pullman Case, supra,* and applied it to the extent of holding that the entertaining of a suit to restrain state officers and involving the question of their authority under state statutes was reversible error even though the parties consented. The doctrine of the *Pullman Case* is thus qualified and it is suggested that the qualification applies here (p. 501) :

"In the absence of any showing that these obvious methods for securing a definitive ruling in the state courts cannot be pursued with full protection of the constitutional claim, the district court should exercise its wise discretion by staying its hands."

It appears to us that the actions here are pursued with complete protection of defendant's constitutional rights, the cir-

cuit court having stayed enforcement of plaintiff's order pending determination of the action.

In view of the broad ground taken in the two cases above cited, we conclude that the actions in federal court offer no obstruction to the prosecution of these actions. The whole matter appears to us to present questions of comity and judicial restraint in the interest of avoiding the conflicts and confusion of competing jurisdictions, rather than one of jurisdiction of the courts of this state of the subject matter of the actions.

The next question is whether sec. 285.06, Stats., vests the insurance commissioner with authority to bring these actions. This section reads as follows:

"Whenever a suit praying for an interlocutory injunction shall have been begun in a federal district court to restrain any department, board, commission or officer from enforcing or administering any statute or administrative order of this state, or to set aside or enjoin such suit or administrative order, such department, board, commission or officer, or the attorney general, may bring a suit to enforce such statute or order in the circuit court of Dane county at any time before the hearing on the application for an interlocutory injunction in the suit in the federal court. Jurisdiction is hereby conferred upon the circuit court of Dane county and on the supreme court, on appeal, to entertain such suit with the powers herein granted. The circuit court shall, when such suit is brought, grant a stay of proceedings by any state department, board, commission or officer under such statute or order pending the determination of such suit in the courts of the state. The circuit court of Dane county upon the bringing of such suit therein shall at once cause a notice thereof, together with a copy of the stay order by it granted, to be sent to the federal district court in which the action was originally begun. An appeal may be taken within ten days after the termination of the suit in the circuit court to the supreme court of the state, and such appeal shall be in every way expedited and set for an early hearing."

While in terms this section vests jurisdiction in the circuit court for Dane county to try and in the supreme court to hear

on appeal the cases referred to in the section, it does not in any real sense confer jurisdiction of the subject matter of the action that has not already been conferred by the constitution. What it does is to prescribe the venue of the action, and in specified situations to authorize suit by the departments, boards, commissions, and officers. The contention made by defendant in respect of section 266 of the Judicial Code is, of course, applicable here—that since there was no formal order by plaintiff at the time the federal cases were started, there was obviously no attempt to restrain enforcement of any order by plaintiff, and the contingency upon which plaintiff's authority to bring these actions under sec. 285.06, Stats., depends never happened. It was held in *Department of Agriculture and Markets v. Laux,* 223 Wis. 287, 270 N. W. 548, that sec. 285.06 should be liberally construed to achieve its beneficent purposes, and we consider that it does not require any great liberality of construction to warrant the holding that its calls are satisfied in the present situation. Plaintiff purported to be enforcing or administering the insurance statute by whatever action he had taken or by whatever inaction there had been up to the time suit was started in federal court. Certainly, the concern of appellant had been sufficiently aroused to induce it to commence its actions in federal court. While it is literally true that no formal order had been entered at the time that these federal actions had been commenced, we see no escape from the conclusion that defendant was trying to restrain plaintiff from doing something and that that something was the enforcement (in accordance with plaintiff's understanding of them) of statutes regulating the insurance business in Wisconsin. This being true, the situation was literally within the terms of sec. 285.06 and the absence of a formal order is immaterial.

We conclude that the circuit court for Dane county and this court have jurisdiction to entertain and determine these ac-

tions, and that by doing so, neither court is contributing to confusion, or guilty of a mere intrusive exercise of jurisdiction.

We see no particular point in discussing the propriety of declaratory relief. The declaration requested here concerns the extent of plaintiff's powers and duties as commissioner in such a situation as is here presented. These are necessarily in issue irrespective of the prayer for declaratory relief, since one of defendant's principal contentions is that plaintiff's actions are beyond his powers and in violation of his duties. In any event, the pendency of actions in federal court involving the same questions merely operates as a consideration which would lead the state court to exercise a discretion not to make a declaration. In view of what was said in the *Pullman Case, supra,* it is at least doubtful whether the state court, in the exercise of its discretion, ought to consider the pendency of the action in the federal court as a ground for refusing a declaration since it is in a position to give a final and authoritative declaration and the federal court is not.

*By the Court.*—Orders affirmed.

The following opinion was filed March 13, 1942:

WICKHEM, J. (*upon motion for rehearing*). A careful review of the matters brought to our attention upon defendant's motion for rehearing has failed to convince us that there should be any change or modification of the views expressed in the original opinion. We think that a detailed discussion of these matters would not be profitable. Appellant, however, presents certain constitutional contentions not previously argued, and we address ourselves briefly to these points.

Defendant contends that the decision of this court, as well as the order of the insurance commissioner giving rise to this litigation, deny to defendant rights guaranteed to it by the United States constitution. More specifically, it is said, (a) that a state, under the guise of regulation, may not deny

to an insurance corporation the power to enter into a contract requiring its members to pay costs incurred by the corporation prior to, or as an incident to the completion of the insurance contract; (b) the state may not require inclusion of membership fees in any reserve for insurance liability or protection when by the express terms of the insurance contract this item is independent of the insurance premium, is not repayable in whole or in part, and is collected to reimburse the company for expenses incurred by it in the execution of the contract. It is further contended that by the holding of this court in sustaining these powers defendant's constitutional rights are violated, (1) because it imposes an arbitrary and unreasonable interference with the right of contract in violation of section 1 of the Fourteenth amendment of the United States constitution; (2) because it impairs the obligation of contracts in violation of section 10, article I, constitution of the United States.

Reduced to its lowest terms, the contentions deny the power of a state, (1) to require maintenance of reserves for portions of the premium covering acquisition expenses, or (2) to prevent the insurance company from contracting with the insured for the giving of a life privilege in return for the payment of a portion of the premium separated and denominated a "membership fee," or (3) to require that unearned-premium reserves be maintained upon the premium as defined in the opinion, or (4) to forbid the latter to be so split and labeled as to make inapplicable reserve provisions relating to premiums generally.

We do not deem these contentions valid. We consider the statutes to constitute a reasonable exercise of the power of the state to regulate insurance policies in order to promote the

solvency and providence of the contract and to prevent forfeiture and discrimination. We cannot say that the statutes are not reasonably adapted to this end, and hence they neither constitute an unreasonable or arbitrary interference with the right of contract nor impair the obligation of contracts.

Some concern is expressed in defendant's brief upon rehearing whether the scope of the opinion is sufficiently circumscribed. While we are of the view that it is, we see no objection to reiterating that the decision is put upon the ground that defendant's plan violates the statutes because of its use of a membership fee as the consideration for a life privilege—a fee to which is allocated a portion of the expenses of furnishing insurance protection, which is treated as earned at once and against which unearned-premium reserves cannot be set up as required by the statutes.

*By the Court.*—The motion for rehearing is denied with $25 costs.