**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 13707.**

United States Court of Appeals Seventh Circuit.

Feb. 7, 1963.

Rehearing Denied March 25, 1963.

Louis F. Oberdorfer, Asst. Atty. Gen., Michael A. Mulroney, Atty., U. S. Department of Justice, Washington, D. C., Edward R. Phelps, U. S. Atty., Springfield, Ill., Lee A. Jackson, Melva M. Graney, Attys., Department of Justice, Washington, D. C., Marks Alexander, Asst. U. S. Atty., Springfield, Ill., for appellant.

Russell H. Matthias, Chicago, Ill., James C. Craven, Springfield, Ill., Meyers & Matthias, Chicago, Ill., Allen T. Lucas, Springfield, Ill., for plaintiff-appellee State Farm Mutual Automobile Insurance Co. Robert J. Meyers, James M. Redding, Charles B. Robison, Chicago, Ill., of counsel.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

United States of America, defendant, herein referred to as the Government, has appealed from a judgment against it in the amount (adjusted by stipulation and court order) of $272,499.67, with interest, in favor of State Farm Mutual Automobile Insurance Company, an Illinois

corporation, a mutual casualty insurance company, plaintiff, which is herein referred to as taxpayer. D.C., 200 F.Supp. 324.

The question for decision is whether membership fees collected by it in 1955 and 1956 constitute gross premiums within the meaning of § 823(1) of the 1954 Internal Revenue Code, 26 U.S. C.A. § 823(1), so as to be taxable as net premiums under 26 U.S.C.A. § 821(a) (2).[1]

The facts which we now set forth are not substantially in dispute.

Most of taxpayer's business in recent years has been automobile insurance, although it writes some general liability insurance. Since its inception in 1922, the taxpayer has charged prospective policyholders a membership fee. Provision therefor is made by its bylaws.[2]

The payment of the membership fee gives the payor the right to be insured by the company. No one who has not paid the membership fee can be insured. The payment of the membership fee and the first premium is usually simultaneous and is sometimes made in the same check. In the early days of the corporation, some other persons became members without taking out an insurance policy, but during 1955 and 1956 no more than a few did so. The membership fee is returned if the policy is not issued. If the company collects a membership fee and within 60 days rejects the applicant for insurance, then in practice, the policy is discontinued and the membership fee is refunded. The only charge is a pro rata part of the premium.

The taxpayer's sales organization consists of local agents, district managers, and state organizations. At the time the policy is written, the local agent is paid a portion of the membership fee. He receives no other portion of the receipts which the company designates as premiums when the insurance is initially written. He does receive a part of the premium charged for renewals.

In its report to its shareholders in 1955 and 1956, the taxpayer included membership fees in its description of premium income, although the annual statements of the company separated them.

The membership fee varies with the type of coverage and ranges from two to about seven dollars per coverage. The purpose of this fee is to cover initial

---

1. See p. 366, as to amendments shown in 1958 edition of U.S.Code.

2. Article II
MEMBERS

Section 1. Every policyholder shall be a member of the Corporation. The Board of Directors shall determine the eligibility and conditions of membership and may make equitable classifications of members as respects each kind of insurance. Each kind of insurance shall bear its equitable proportion of the losses, expenses and liabilities of the Corporation computed as required by law. The Board of Directors shall determine the territory in which the Corporation shall operate and the territory from which members shall not be taken.

Section 2. Membership shall begin upon the taking effect of the insurance and shall end on the cancellation or other termination of the same.

Section 3. Each Member shall be entitled to one vote in person or by proxy at all meetings of Members. * * *
* * * * *

MEMBERSHIP FEES, PREMIUMS, CONTINGENT LIABILITY

Section 1. Membership fees for the different kinds of insurance transacted by the Corporation may be fixed in such amounts and upon such conditions as ordered by the Board of Directors and set out in the policy.

Section 2. (a) The premiums for the different kinds of insurance transacted by the Corporation shall be in such amounts and upon such conditions as may be approved by the Board of Directors. No member shall be subject to assessment or contingent liability upon any policy at any time.

(b) Subject to the provisions of law regarding return of excess premiums, the Board of Directors may authorize from time to time such refunds or credits to policyholders from the savings and gains of the Corporation and upon such terms and conditions and in such amounts or percentages as may, in their judgment, be proper, just and equitable.

underwriting expenses. The membership fees are immediately paid out. The local agent received 55 per cent of this amount, the district manager 18.7 per cent and the state organization 26.3 per cent.

The taxpayer collected about $11,000,-000 in membership fees in 1955 and about $13,000,000 in 1956, which it paid out to its sales organization.

The membership fee does not cover the entire acquisition and initial costs. Initial cost in excess of membership fee is paid out of the general income from premiums and from investments. The taxpayer paid out about $29,000,000 in 1955 and about $33,000,000 in 1956 for its general expenses including costs of acquiring new business in excess of such expenses paid from membership fees. The latter amounts were paid out of the general revenue of the company, of which premium collections accounted for about 97 per cent.

The membership fee is a nonrecurring item. No part of it is considered a payment to the insurer for acceptance of the risk of insuring the insured. Persons who pay the membership fee and become insured and then discontinue after having been covered for several years, may again be covered by the company without the payment of another membership fee if they are still an acceptable risk.

The company's idea in charging a membership fee was that the initial nonrecurring cost of determining whether that applicant was a satisfactory risk—i. e., for determining qualifications and eligibility—was an extra cost which should be borne by the individual and not by the company. In addition, the charging of membership fees acted to decrease the unearned premium liability account and free surplus, permitting accelerated growth.

The general practice in the insurance business and of mutual automobile casualty companies is to meet initial costs for commissions, investigation and acquisition out of the general premium income of the insurer. These are normal underwriting expenses which are considered in determining the premium charged.

The membership fees have no relationship to the proposed premium rates filed by the company with the various state insurance departments. All policyholders of the company are members but not all members are policyholders. There are a few million people having contractual status with the company who are not strangers, but are inchoate or inactive members, and who may at any time become active policyholder members with full rights of insured policyholders while so insured. A membership fee is exacted only once for a specific coverage on an automobile. The fee gives the member the right to apply for insurance at any time and he will be granted insurance if he is an acceptable risk according to the current underwriting standards of the company. The membership fee on the comprehensive coverage has consistently been $2 for many years even though the insurance rate for comprehensive has varied. When the rates for the comprehensive coverage are filed they do not include any reference to the membership fee. Members who are not policyholders are given the right to apply for insurance at any time they are deemed a desirable risk. They cannot vote (or share in any dividends distribution) unless they are policyholders. In other words, a membership gives a right to apply for a policy at any future date, a right denied to one who is not a member. The premium paid for the first policy is in addition to the money paid for the membership fee.

Vice-president Curry testified for taxpayer and thereby made it clear that the amount of the membership fee charged is not uniform in amount but varies according to the kind and amount of liability which the applicant desires.

Under cross-examination, vice-president Curry's testimony reveals:

"Mr. Lederer [government counsel]: Q. If a person becomes a member and takes out a policy for one automobile, and he subsequently acquires a second automobile, does

he have to pay an additional membership fee?

"A. He does for a second automobile, that is right.

"Q. Would he then be entitled to two votes at meetings of the company, would he be a member twice in other words?

"A. I'm not sure that I can answer that question. I've never been asked that question and never have contemplated it.

"The Court: What do the bylaws provide?

"The Witness: As I remember the bylaws entitle him to a vote, would entitle him to a vote, yes, for each membership that he would hold. I'm not sure, I'd have to look at the bylaws to check on that.

"Mr. Lederer: Q. And, if a person insures twenty automobiles, he would have to pay the membership twenty times, wouldn't he?

"A. No, we have a limitation, we don't ask any individual or any policyholder to pay more than five memberships. It's the only modification we have with respect to fleet risks."

1. 26 U.S.C. § 821(a) (2), as amended March 13, 1956, p. 4434, effective as to taxable years beginning after December 31, 1954, 26 U.S.C. (1958 ed.), p. 4427, 4435, imposes a tax upon the income of every mutual insurance company, with exceptions not here relevant, which may be determined in the following manner:

"(2) If for the taxable year the gross amount of income from the items described in section 822(b) (other than paragraph (1) (D) thereof) and net premiums, minus dividends to policyholders, minus the interest which under section 103 is excluded from gross income, exceeds $75,000, a tax equal to one percent of the amount so computed, or 2 percent of the excess of the amount so computed over $75,000, whichever is the lesser."

26 U.S.C. (1958 ed.), § 823 provides:

"(1) *Net premiums.*—The term 'net premiums' means gross premiums (including deposits and assessments) written or received on insurance contracts during the taxable year less return premiums and pemiums paid or incurred for reinsurance. Amounts returned where the amount is not fixed in the insurance contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums but shall be treated as dividends to policyholders under paragraph (2)."

While the government, by using a detailed analysis, arrives at a conclusion that the legislative history demonstrates that congress used the term "gross premiums" as conceptually akin to gross receipts from writing insurance, and expressly adopted the meaning of that term as it allegedly was, as early as 1938, used in the insurance business (where it also allegedly included membership fees), we prefer in the interest of lucidity to base our holding on the facts in the record before us and the applicable court decisions.

In Union Insurance Company v. Hoge, 62 U.S. (21 How.) 35, 16 L.Ed. 61 (1858), the United States Supreme Court considered the theory of mutual insurance companies, saying, at 64:

"It is argued, however, that the company in question is a mutual insurance company, as declared by the act; that, according to this system the insured must be a member of it, and that a person insured upon a cash premium, without any further liability, cannot be a member. This argument is not well founded, either upon principle or authority. Admitting that the insured must be a member of the company, he is made so by the payment of the cash premium. The theory of a mutual insurance company is, that the premiums paid by each member for the insurance of his property constitute a common fund, devoted to the pay-

ment of any losses that may occur. * * * "

It necessarily follows that a mutual insurance company, by the very nature of its legal structure, makes an applicant for insurance a member *ipso facto* when it accepts his application and issues him insurance. The premium that he then pays goes into a common fund which is used to pay insurance losses and expenses, in which all insured parties, or members, have a mutual interest in proportion to the amount of their policies. Membership and insurance are contemporary and coexistent. There was no consideration for the collection of a membership fee by the taxpayer. It impliedly recognized this in that it returned the "membership fee" if an application for insurance was rejected and also by the fact that its bylaws provide that "Membership shall begin upon the taking effect of the insurance and shall end on the cancellation or other termination of the same."

In Duel v. State Farm Mut. Automobile Ins. Co., 240 Wis. 161, 1 N.W.2d 887, at 894 (1942), we note that a view similar to that which we now express has been recognized in Wisconsin:

> "It is held in this state with respect to domestic mutual companies that those who at any given moment hold policies in such a company are the only members of the corporation and that membership and insurance are coterminous. Huber v. Martin, 127 Wis. 412, 105 N.W. 1031, 1135, 3 L.R.A.,N.S., 653, 115 Am.St.Rep. 1023, 7 Ann.Cas. 400; Kennan v. Rundle, 81 Wis. 212, 51 N.W. 426; Zinn v. Germantown Farmers' Mut. Ins. Co., 132 Wis. 86, 111 N.W. 1107; Wisconsin Town M. R. Co. v. Calumet C. M. F. Ins. Co., 224 Wis. 109, 271 N.W. 51."

To the same effect is State Farm Mutual Automobile Ins. Co. v. Duel, 244 Wis. 429, 12 N.W.2d 696, affirmed, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812.

2. Taxpayer would have us, as an aid to construction, consider the District of Columbia Revenue Act of 1937, 50 Stat. 673, 676, § 1806, 47 District of Columbia Code (1961 ed.), which provides that a tax shall be paid by insurance companies in an amount

> "* * * equal to 2 per centum of their policy and membership fees and net premium receipts or *consideration* received on all insurance and *annuity contracts* on risks in the District of Columbia * * *." [3]

(Italics supplied.)

This provision superseded § 650, 31 Stat. 1189, 1291, approved March 3, 1901, which provided:

> "Sec. 650. Statement of Business in District of Columbia.— Every insurance company and association doing business in the District of Columbia shall * * * furnish * * * a statement of its business in said District, setting forth specifically the net amount of its premium receipts, * * * 'and all insurance companies * * * shall pay * * * a sum equal to one and one-half per centum of said premium receipts * * *'."

Insurance policies providing for annuities frequently are held by members of insurance associations dealing in annuities, which is a protection quite different from automobile coverage. However, both types of insurance are covered by the 1937 act as amended. In 1937 when it was under consideration in the House, Mr. Dirksen of Illinois, 81 Cong. Rec. Part 5, p. 5921, indicated there was no departure in mutual insurance company law, as now contended for by taxpayer. He said:

> "In the first place, there is a 1½-percent tax on insurance premiums in the District at the present time. *All this bill* [the 1937 Act] *does is to raise it to 2 percent.* * * * The insurance companies are agreeable. The tax will raise $220,000. Every-

---

3. We have ascertained that the act as passed in 1937 was amended in 1938 so that it reads in the form above quoted. (52 Stat. 358.)

body seems to be agreeable. There was no opposition to the proposal of the tax. It simply elaborates the tax now on the books." (Italics supplied.)

To us he made it clear that the 1937 bill did not mark a departure from established law and practice by differentiating membership fees from premium receipts for the purpose of taxation. Counsel for neither party cites any remark by any other member indicating a different view. Neither do we see that the 1938 amendment indicated an intention to depart from the pattern of the 1937 enactment as it bears on this case.

3. We hold that the membership fees collected by taxpayer are taxable, as contended by the government.

■ 4. Taxpayer relies on a 1947 letter of the Bureau of Internal Revenue to Thomas J. Green, who, on behalf of Farm Bureau Mutual Automobile Insurance Company, Columbus, Ohio, had requested a ruling relative to the inclusion of membership fees, in determining the amount of net premiums for the purpose of computing federal income tax provided for by 26 U.S.C.A. 1939 Internal Revenue Code, § 207(a) (2). This ruling was revoked by the Internal Revenue Service in November 1960 in a letter addressed to the insurance company by its new name, Nationwide Mutual Insurance Company, wherein the Internal Revenue Service states that it had concluded that such membership fees were taxable as premiums, citing the Duel cases referred to on page 367.

There is no evidence in the record before us that the taxpayer knew of or relied on Nationwide's ruling while it was in force.

The 1947 ruling was contained in a private letter addressed to one taxpayer in regard to a problem which it had presented in a letter to the Commissioner of Internal Revenue pertaining to the facts in its own case. The conclusion in that letter was in conformity with the present contention of taxpayer as to the definition of "net premiums". However, that conclusion involved an interpretation of the existing law, Automobile Club of Mich. v. Commissioner, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746, and, in the view which we now take, the Commissioner then made a mistake of law, and, even if the ruling had been known to taxpayer in the case at bar, it would have been no support for its reliance thereon. Neither 26 U.S.C.A. § 3791(b) of the 1939 code [4] nor the 1954 Internal Revenue Code, 26 U.S.C.A. § 7805(b) [5] prevented the Commissioner of Internal Revenue from taking such retroactive action as embodied in the letter of revocation. Automobile Club v. Commissioner, supra, 353 U.S. 184, 77 S.Ct. 707. By so holding we do not mean to say that such administrative rulings have not been recognized by the Supreme Court as "further evidence" that its construction of a provision of the revenue act "is compelled by the language" thereof. Hanover Bank v. Commissioner, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187.

For these reasons, the judgment of the district court is reversed and the cause is remanded to that court with instructions to enter a judgment in favor of defendant.

Reversed and remanded with directions.

---

4. "Retroactivity of regulations or rulings. The Secretary, or the Commissioner with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision, relating to the internal revenue laws, shall be applied without retroactive effect."

5. "Retroactivity of regulations or rulings. —The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."